Jimmie D. McLAIN, Jr. and Rodna J. Forbes, Appellants,

v.

The STATE of Iowa, L.L. Pelling Company, Inc., Cedar Rapids Asphalt & Paving, and Selco, Inc., Appellees.

No. 96–270.

Supreme Court of Iowa.

May 21, 1997.

Timothy S. White and Crystal L. Usher of White & Johnson, P.C., Cedar Rapids, for appellants.

Samuel C. Anderson and Natalie Williams Burris of Swisher & Cohrt, P.L.C., Waterloo, for appellees-State, L.L. Pelling Co., and Cedar Rapids Asphalt & Paving.

J. Michael Weston and Brenda K. Werner of Moyer & Bergman, P.L.C., Cedar Rapids, for appellee-Selco, Inc.

Considered by HARRIS, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

Plaintiff, Jimmie McLain, was injured in an automobile accident in a construction zone on Interstate Highway 380. He and his wife sued the State of Iowa and the contractors working on the project, claiming the area was unreasonably dangerous because the traffic warning signs were inadequate in alerting motorists of traffic congestion. All defendants moved for summary judgment. The State claimed it was immune from tort liability, pursuant to Iowa Code section 668.10(1) (1993), for claims of failure to place, erect, or install traffic control devices. The contractors claimed they complied with all State plans and specifications and, therefore, were entitled to share the same immunity as the State. The district court granted defendants' motions and dismissed the action. On appeal, we affirm.

I. *Background Facts and Proceedings.*

In April 1992, L.L. Pelling Company (Pelling) and Cedar Rapids Asphalt & Paving[1]

---

1. Pelling and Cedar Rapids Asphalt & Paving later merged into one company and are hereafter referred to as Pelling.

contracted with the State of Iowa, through the Iowa Department of Transportation (DOT), to perform construction on the northbound lanes of Interstate Highway 380 near Cedar Rapids. Pelling subcontracted with Selco, Inc. to install and maintain the traffic control devices for the project. Pursuant to their contracts, Pelling and Selco were bound to comply with the State's plans and specifications. Further, the State retained complete control over the type, number, and location of traffic control devices. Any variation from the plans and specifications required prior State approval.

In the contracts, the parties incorporated by reference numerous general and supplemental specifications. These specifications, which involve highway construction and maintenance and traffic control devices, are located in manuals that have been adopted by the DOT. *See* Iowa Code § 321.252 (requiring DOT to adopt a manual for a uniform system of traffic control devices). They are important because they constitute the standards and requirements that must be observed in contracts awarded by the DOT. In particular, the parties agreed to be bound by SS–5025, the "Supplemental Specification for Traffic Controls for Street and Highway Construction Maintenance, Utility and Emergency Operations." SS–5025 sets forth principles and standards to be observed in the design, installation, and maintenance of traffic control devices.

Before contracting with Pelling, the DOT conducted a traffic volume study to determine the potential for traffic congestion due to the construction and to determine what advance warning signs were needed to alert motorists. The DOT decided that two signs were sufficient to notify northbound motorists of the construction. One sign warned that road construction was eight miles ahead and the other that road construction was three miles ahead. In addition, both signs warned that delays were possible. In accordance with the construction contract, Selco installed the signs at the proper locations. Selco also installed a sign approximately four miles south of the construction zone, warning of "road construction next six miles."

On July 9, 1992, McLain was traveling northbound on I–380 between 5:00 and 6:00 p.m. As he neared the construction zone, and after he passed the three-mile warning sign, traffic became congested because northbound traffic was reduced from two lanes to one lane. A vehicle ahead of McLain abruptly slowed or stopped, and he collided with the rear of the vehicle and suffered personal injuries and property damage. At the time of the accident, all of the DOT's warning signs were in place and in compliance with State requirements. Even though he had passed each of the signs, McLain claims he only saw one of them.

One June 21, 1993, McLain and his wife, Rodna Forbes (hereafter collectively referred to as "McLain"), filed a petition against the State, Pelling, and Cedar Rapids Asphalt & Paving. He sought recovery of the damages he sustained as a result of the accident, and Forbes sought damages for loss of consortium. On May 6, 1994, the district court granted the defendants' motion for leave to add Selco as a third-party defendant. McLain then filed an amended petition to include claims against Selco.

All defendants filed motions for summary judgment. The State claimed it was entitled to judgment under Iowa Code section 668.10(1), which provides immunity to the State for failure to place, erect, or install traffic control devices. The remaining defendants claimed they complied with all State plans and specifications and, therefore, were entitled to the same immunity. McLain resisted the motions, stating that there were numerous genuine issues of material fact and that none of the defendants should be afforded the protection of section 668.10(1).

Following a hearing, the district court granted defendants' motions and dismissed the action. McLain filed timely notice of appeal.

## II.  *Scope of Review.*

Summary judgment is appropriate only when *no genuine issue of material fact exists* and the moving party is entitled to a judgment as a matter of law. Iowa R. Civ. P. 237(c). In determining if there is a genuine issue of fact, we consider the pleadings, depo-

sitions, answers to interrogatories, and admissions on file, together with the affidavits, if any. *Id.* We examine the record before the district court to decide whether a genuine issue of material fact exists and whether the court correctly applied the law. *Phipps v. IASD Health Servs. Corp.,* 558 N.W.2d 198, 201 (Iowa 1997). In doing so, we view the facts in the light most favorable to the party opposing the motion for summary judgment. *Id.* Summary judgment is proper when the only conflict concerns the legal consequences flowing from undisputed facts. *Production Credit Ass'n v. Farm & Town Indus., Inc.,* 518 N.W.2d 339, 341 (Iowa 1994).

### III. *McLain's Claims Against the State.*

McLain asserts that the defendants failed to establish the absence of material fact issues relating to the warnings and traffic control devices in the construction area. Specifically, he claims there are fact issues as to whether the defendants agreed to monitor the effectiveness of the signs and to add, change, or modify the signs as necessary. The State argues that, because all of McLain's claims involve the placement of traffic control devices and the sufficiency of warnings, the State is immunized under Iowa Code section 668.10(1). We agree with the State.

### A. Immunity Under Section 668.10(1).

We must determine whether McLain's claims relate to the State's failure to place, erect, or install traffic control devices. If they do, and the exceptions to immunity are not satisfied, the State is exempt from tort liability. Iowa Code section 668.10(1) provides:

In any action brought pursuant to this chapter, the state or a municipality shall not be assigned a percentage of fault for any of the following:

1. The failure to place, erect, or install a stop sign, traffic control device, or other regulatory sign as defined in the uniform manual for traffic control devices adopted pursuant to section 321.252. However, once a regulatory device has been placed, created or installed, the state or municipal-

ity may be assigned a percentage of fault for its failure to maintain the device.

■ As the statute makes clear, Iowa Code section 668.10(1) immunizes the State for decisions about whether or where to place traffic signs. *Sullivan v. Wickwire,* 476 N.W.2d 69, 73 (Iowa 1991); *Hunt v. State,* 538 N.W.2d 659, 661 (Iowa App.1995). In other words, the State is not subject to tort liability for its decisions concerning sign selection or placement. *Phillips v. City of Waukee,* 467 N.W.2d 218, 220 (Iowa 1991); *Hunt,* 538 N.W.2d at 661. This includes claims that the State improperly failed to install signs, that its signs were improperly located, or that its signs failed to adequately warn motorists. *See Sullivan,* 476 N.W.2d at 73; *Foster v. City of Council Bluffs,* 456 N.W.2d 1, 2 (Iowa 1990).

■ Despite the different characterizations of his claims, McLain's basic claim is that the State should have monitored the effectiveness of the traffic control plan and installed *additional* signs. Jack Anderson, McLain's expert witness, testified in his deposition that, even though the existing signs were adequate most of the time, it was his opinion that an additional sign, preferably a changeable message board, should have been installed for use during peak traffic hours.

■ Iowa Code section 668.10(1) does not just immunize the initial placement or installation of traffic control devices; it applies to all such placements or installations. A plaintiff cannot overcome the State's immunity by merely claiming that the State should have done more to warn motorists or should have installed more traffic control devices. As we held in *Sullivan,* even if a plaintiff makes a claim that the State could have done more to inform motorists of potential danger ahead, the State is still immune. *Sullivan,* 476 N.W.2d at 73.

### B. Exceptions to Immunity.

McLain also argues that even if his claims relate to the State's failure to place, erect, or install traffic control devices, the State still cannot escape liability under section 668.10(1) because the recognized exceptions to governmental immunity are satisfied. We disagree.

There are three exceptions to this immunity: (1) failure to maintain a device; (2) installation of a misleading sign; and (3) where the exigencies are such that ordinary care would require the State to warn of dangerous conditions by other than inanimate objects. *Hunt,* 538 N.W.2d at 661. If any exception is satisfied, the State cannot escape tort liability.

The first exception involves the State's failure to maintain a device. This is the only statutory exception and is contained in the last sentence of section 668.10(1). Based on the plain language of the exception, McLain's argument is without merit. He has made no allegation, and there is no evidence in the record, that the warning signs were not properly maintained. In fact, the evidence indicates that, on the date of the accident, the signage complied with all State plans and specifications.

However, McLain also argues that the State had a contractual duty to "monitor the effectiveness" of the warning signs and that this duty is a maintenance function exempted from section 668.10(1) immunity. He argues that the common meaning of "maintenance" includes this monitoring function. We agree that all parties contracted to monitor the effectiveness of the signs. This duty is one of the fundamental principles of specification SS–5025, which was incorporated into the contracts.

However, monitoring the effectiveness of the signs relates solely to the State's ultimate decision of whether or not to erect *additional* warning signs. Therefore, the immunity still applies. As we stated in *Saunders v. Dallas County,* 420 N.W.2d 468, 472 (Iowa 1988), the decision whether to replace a sign, move it, or supplant it with additional signs, "is not a matter of maintenance under the statute. On the contrary such an action is a matter of deciding to place signs, for which the [State] cannot be held liable." *Saunders,* 420 N.W.2d at 472. Failure to monitor only invokes the maintenance exception when the monitoring involves signs that have already been placed, erected, or installed.

The second exception involves signs that are misleading. McLain claims the warning signs were misleading; therefore, the State

should not be immune. We have recognized that the State may be subject to tort liability under Iowa Code chapter 668 for placing or installing misleading signs. *Phillips,* 467 N.W.2d at 219; *Saunders,* 420 N.W.2d at 472. Specifically, McLain argues that because the signs gave the specific distance until the construction zone, it misled the motoring public into thinking there would be no problems until a driver reached the construction area.

As a matter of law, the signs were not misleading. As mentioned, two of the signs also notified motorists that delays were possible. The signs clearly warned motorists of the construction zone and, by warning of delays, they made it clear that traffic could be slowed or even stopped. Based on these facts, the motoring public was not misled by the DOT's signs.

The final exception involves exigent circumstances. McLain argues that the "exigencies" exception to Iowa Code section 668.10(1) is satisfied. We have recognized that the State may not be exempt from tort liability if the exigencies are such that ordinary care would require the State to warn of dangerous conditions by other than inanimate devices. *See Hershberger v. Buena Vista County,* 391 N.W.2d 217, 220 (Iowa 1986).

No evidence in the record suggests that this construction project was particularly unusual or that anything other than signs were needed. In fact, Jack Anderson, McLain's expert, testified that he would not have recommended a flagger for this project because of the possible danger to that person. Therefore, we conclude this exception is not satisfied.

We conclude as a matter of law that McLain's claims relate to the State's failure to place, erect, or install traffic control devices and that none of the exceptions to section 668.10(1) are satisfied. Therefore, the State is immune from tort liability.

### IV. *McLain's Claims Against the Contractors and Subcontractor.*

We must next determine whether the immunity extends to the State's contractors and

subcontractor. McLain argues that Pelling and Selco are not immune because they failed to fully perform their contracts by not monitoring the traffic control devices. He claims these duties are clearly part of the specifications included in the contract. The defendants claim that the immunity extended to the State under Iowa Code section 668.10(1) must be extended to the State's contractors who comply with all State plans and specifications. We agree with the defendants.

■ The rule is well established that a contractor for the State is not liable to a third party for damages if the contractor complies with the State's plans and specifications and is not negligent in performing its work. *Monroe v. Razor Constr. Co.*, 252 Iowa 1249, 1252, 110 N.W.2d 250, 252 (1961); *Pumphrey v. J.A. Jones Constr. Co.*, 250 Iowa 559, 568–69, 94 N.W.2d 737, 742 (1959). In other words, in those situations the contractor shares the same immunity as the State. However, if a contractor acts negligently, it cannot enjoy any immunity. *Monroe*, 252 Iowa at 1252, 110 N.W.2d at 252.

■ Here, the evidence in the record reflects that Pelling and Selco complied with all State plans and specifications and did not perform their work in a negligent manner. Throughout the project, the State controlled all decisions regarding the placement and installation of the traffic control devices. Selco installed the warning signs as it contracted to, and on the day of the accident, the signs were in their proper locations and in complete working order.

McLain also argues that the duties of Pelling and Selco, as contractors, extend beyond their contractual duty to implement the State's plan. He cites *Kowalski v. State*, 447 N.W.2d 146, 148 (Iowa App.1989), for the proposition that contractors have a continuing duty to the traveling public to provide reasonable traffic control devices. In other words, McLain argues that Pelling and Selco had a duty to monitor the effectiveness of the traffic control devices *after* they were installed.

We first note that the lawsuit in *Kowalski* was filed before the July 1, 1984 effective date of section 668.10(1). *See* 1984 Iowa Acts ch. 1293, § 10. Therefore, our court of appeals decided the case without reference to the statute or the effect of state immunity on contractors involved in construction projects with the State. McLain's argument fails because, as noted earlier, "monitoring" is part of the decision-making process of whether to install additional signs. This decision is clearly retained by the State and immunized by section 668.10(1). Because Pelling and Selco complied with the State's contract specifications, we conclude as a matter of law that they may share immunity with the State, pursuant to Iowa Code section 668.10(1).

### V. *Conclusion.*

We conclude the State is immune from tort liability under section 668.10(1). We also conclude that Pelling and Selco share that immunity with the State. Therefore, we affirm the summary judgments granted by the district court. We have considered other arguments raised by the parties and find them to be without merit.

**AFFIRMED.**