Rebecca A. SHIVVERS, Appellant,

v.

HERTZ FARM MANAGEMENT, INC.
and John L. McKinney, Appellees.

No. 97–755.

Supreme Court of Iowa.

June 3, 1999.

Lawrence L. Marcucci and Michael A. Dee of Shearer, Templer & Pingel, West Des Moines, for appellant.

Thomas J. Cahill of Cahill Law Offices, Nevada, for appellee Hertz Farm Management.

Brent B. Green, Mari Thinnes Culver, and Timothy S. Eckley of Duncan, Green, Brown, Langeness & Eckley, P.C., Des Moines, for appellee McKinney.

CARTER, Justice.

Plaintiff, Rebecca A. Shivvers, who purchased land at an auction, appeals from an adverse judgment in a dispute with an auction company, Hertz Farm Management, Inc., and sellers' attorney, John L. McKinney, concerning the existence of an easement on the property that she purchased. The district court granted summary judgment for both defendants. After reviewing the record and considering the arguments presented, we affirm the judgment of the district court.

## I. *Background Facts and Proceedings.*

In June 1990 the district court ordered that real estate belonging to the Daisy Zenor Estate be sold at public auction. It ordered defendant, Hertz Farm Management, Inc., to conduct the auction and act as escrow and closing agent on the sale. A second defendant, attorney John McKinney, prepared the sales contracts for the auction. Both McKinney and Hertz were paid by the estate.

The auction commenced on September 10, 1990. The plaintiff, Rebecca Shivvers, was the high bidder on a ninety-eight-acre tract of land. There are factual disputes regarding whether Randall Geiger was bidding on the property with Shivvers or had an agreement to purchase some of the land from Shivvers directly. Shivvers and Geiger did discuss the sale of some of the ninety-eight-acre tract after the auction,

and Shivvers had allegedly agreed to sell some of the land to him.

Pursuant to the directions of Hertz, McKinney prepared a contract for the sale of the west half of the tract to Geiger. That contract also granted Geiger an easement across the east half. Shivvers subsequently met with McKinney, and he informed her of the contract already signed by Geiger. Shivvers objected, believing the entire tract was to be sold to her. She eventually signed a contract for the east half. Her contract did not contain any reference to an easement, and McKinney acknowledges it was inadvertently omitted.

On November 28, 1990, Hertz informed Shivvers of the omission of the easement in her contract. In that communication, Hertz placed her on notice that the Zenor interests, Hertz, and Geiger were all taking the position that Geiger was entitled to an easement across her property, notwithstanding the fact that this was not mentioned in her contract. Shivvers filed suit against the trustees and heirs of the estate on September 12, 1991, for a determination of her rights and for money damages [hereinafter referred to as the Boone County litigation]. She later amended her petition to include Geiger. In May 1993 a settlement was reached and reduced to judgment. Shivvers was ordered to provide Geiger a somewhat different easement than that contained in his sales contract, and all of Shivvers's claims for money damages were dismissed with prejudice.

Subsequently, Shivvers's attorneys filed a lawsuit against her in Polk County seeking to recover unpaid attorney fees. She counterclaimed, alleging her counsel had committed malpractice in failing to name Hertz and McKinney as defendants in the Boone County litigation. Counsel responded that the statute of limitations had not run and she could still sue Hertz and McKinney. In September 1995 Shivvers filed the current action in Story County against Hertz for negligence, breach of fiduciary duty, and breach of contract, and against McKinney for legal malpractice, breach of fiduciary duty, and breach of contract. The Polk County action was continued pending the outcome of this case.

Hertz and McKinney filed separate motions for summary judgment, and the district court granted both of them. With respect to McKinney, the court found the record showed no evidence of any direct attorney-client relationship between Shivvers and McKinney or that Shivvers benefited from, or relied upon, any advice from him. The court concluded Iowa law only extended third-party recovery in legal malpractice cases to actions involving testamentary or donative distributions. It did not consider Shivvers's claim that she was a third-party beneficiary of the sellers' contract with McKinney. The court also found there was no support for Shivvers's claim of breach of fiduciary duty.

In granting Hertz' motion for summary judgment, the court found Hertz was the disclosed agent for the estate and incurred no liability with respect to the sale of the property. It further found the auctioneer's limited role in serving as an agent for the buyer did not give rise to a duty of care sufficient to support a claim of negligence.

Shivvers has appealed, claiming summary judgment should not have been granted on her claims of negligence, professional negligence, and breach of fiduciary duty. She has abandoned her contract claims.

## II. *Scope of Review.*

Summary judgment is appropriate if there appears to be no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). We examine the record before the district court to decide whether a genuine issue of material fact exists and whether the district court correctly applied the law. *McLain v. State,* 563 N.W.2d 600, 603 (Iowa 1997). We view the facts in

the light most favorable to the party opposing the motion for summary judgment. *Id.* Summary judgment is appropriate when the only conflict concerns the legal consequences flowing from undisputed facts. *Id.*

Every legitimate inference that can be reasonably deduced from the evidence should be afforded the party resisting a summary judgment motion, and a fact question is generated if reasonable minds could differ on how the issue should be resolved. *Farm Bureau Mut. Ins. Co. v. Milne,* 424 N.W.2d 422, 423 (Iowa 1988).

### III. *Attorney McKinney.*

■ Shivvers contends the district court erred in granting McKinney summary judgment on her claim of professional negligence. She concedes she was not McKinney's client but argues that she was a third-party beneficiary of the services McKinney contracted to provide for the Zenor interests.

■ Ordinarily, an attorney owes a duty of care only to his or her client. *Holsapple v. McGrath,* 575 N.W.2d 518, 520 (Iowa 1998) (*Holsapple II* ). "The limits of an attorney's duty of care have proceeded from a strict requirement of privity of contract." Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 7.2, at 491 (4th ed.1996) [hereinafter Mallen & Smith]. The privity requirement is derived from the following concerns:

> First, absent a requirement of privity, parties to a contract for legal services could easily lose control over their agreement. Second, imposing a duty to the general public upon lawyers would expose lawyers to a virtually unlimited potential for liability.

*Schreiner v. Scoville,* 410 N.W.2d 679, 681 (Iowa 1987); *see also* Joan Teshima, Annotation, *Attorney's Liability, To One Other than Immediate Client, for Negligence in Connection with Legal Duties,* 61 A.L.R.4th 615, 624 (1988).

■ We have recognized an exception to the privity requirement in situations involving specifically identifiable beneficiaries of testamentary and nontestamentary instruments. *Holsapple v. McGrath,* 521 N.W.2d 711, 713–14 (Iowa 1994) (*Holsapple I* ) (third-party recovery for malpractice in preparation of nontestamentary instrument); *Schreiner,* 410 N.W.2d at 682–83 (beneficiary of will has cause of action against testator's attorney). The critical factors in our decisions to extend liability have been the frustration of the testator's or donor's intent and the nonclient's status as the direct, intended, and specifically identifiable beneficiary of the lawyer's services. *Holsapple I,* 521 N.W.2d at 713–14; *Schreiner,* 410 N.W.2d at 682–83. The key inquiry is whether the principal purpose of the attorney's retention was to provide legal services for the benefit of the plaintiff. *See* Mallen & Smith § 7.13, at 532.

■ In *American State Bank v. Enabnit,* 471 N.W.2d 829, 832 (Iowa 1991), we discussed as follows the possibility of a party, who was not the client of an attorney, relying on a third-party beneficiary theory:

> Lawyer liability to anyone but a client is extremely rare, though it sometimes exists pursuant to a third-party beneficiary theory. *For such liability to exist it must appear that the client intended to benefit the third party in the transaction.*

(Emphasis added.) We are convinced that the intent to benefit required for a third-party beneficiary relationship cannot arise if the instructions from the lawyer's client conflict with the wishes of the third-party claimant. That was clearly the situation here.

■ Although Shivvers at times alludes to McKinney's omission of the Geiger easement in drafting her purchase agreement, that is not the gravamen of her claim. A reading of paragraphs 26 and 27 of her petition reveals that her complaint against McKinney is in regard to his role in including the easement in Geiger's contract. As

to that matter, McKinney prepared the Geiger contract exactly as his clients' agent, Hertz, instructed him to do. The Geiger contract was so prepared in the face of a dispute with Shivvers concerning what Geiger acquired at the sale. Even in a nonlitigation context, if the parties to a real estate transaction intend differing results, the sellers' attorney cannot owe a duty to the buyer without encroaching on the essential obligations of undivided loyalty, independent judgment, and confidentiality owed to his or her client. *See* Mallen & Smith § 7.2, at 491; § 7.13, at 536; *see also Clagett v. Dacy*, 47 Md.App. 23, 420 A.2d 1285, 1290 (1980) (because bidder's interest would likely be in conflict with seller, attorney for seller had no duty to buyers at foreclosure sale).

Shivvers argues an issue of material fact exists on the question of her reliance, and she would show, if we remand, that she relied on McKinney to properly prepare the contract. The fact of her reliance, however, is not a circumstance that would defeat summary judgment absent some indication that the Zenor interests intended to specifically benefit Shivvers through its use of McKinney's legal services. As we have previously discussed, such an intention may not be found under the circumstances of the disputed transaction.

 Shivvers also contends the district court erred in granting McKinney summary judgment on her claim of breach of fiduciary duty. The existence of a fiduciary relationship necessarily assumes one of the parties has a duty to act for or to give advice for the benefit of the other upon matters within the scope of the fiduciary relationship. *See Kurth v. Van Horn*, 380 N.W.2d 693, 695 (Iowa 1986). We have already concluded McKinney owed no duty to Shivvers. Summary judgment was properly granted on this claim as well.

**IV. *Hertz.***

 Shivvers challenges the district court's grant of summary judgment to Hertz on her negligence claim. It is well-established an auctioneer operating as an agent for a disclosed principal incurs no liability on a sales contract. *Moser v. Thorp Sales Corp.*, 256 N.W.2d 900, 907 (Iowa 1977); *Barrett v. Rumeliote*, 256 Iowa 1, 6, 126 N.W.2d 322, 325 (1964); 7 Am.Jur.2d *Auctions & Auctioneers* § 82 (1997); 7A C.J.S. *Auctions & Auctioneers* § 23(b) (1980); Annotation, *Liability of Auctioneer or Clerk to Buyer as to Title, Condition, or Quality of Property Sold*, 80 A.L.R.2d 1237, 1238 (1961). Because Hertz disclosed that the estate was its principal, the district court was correct in concluding that it had no liability to Shivvers on a contract theory. Shivvers does not challenge that ruling on this appeal but contends that the presence of a disclosed principal provides no defense to Hertz with respect to the tort theories of negligence and breach of fiduciary duty.

 The district court believed that Hertz' status as an agent for a fully disclosed principal also relieved it of any liability to Shivvers on her negligence and breach-of-fiduciary-duty theories. We are unable to accept that conclusion. The rule of nonliability that exists in a fully disclosed principal context only pertains to the contract liability of the agent. *See* Restatement (Second) of Agency § 320 (1958) (a person making a contract with another as agent for a disclosed principal does not become a party to the contract). This rule has no application in determining the agent's tort liability when that liability is based on the agent's own conduct. In reversing a judgment for the agent of a disclosed principal in a tort action, a federal appellate court stated the distinction as follows:

> Though the district court correctly held that corporate officers would not be liable for a corporate contractual obligation, this was not such an obligation. Corporate officers may of course be liable jointly and severally with their cor-

poration for obligations arising out of tortious conduct of the officers....

*Sit–Set, A.G. v. Universal Jet Exch., Inc.,* 747 F.2d 921, 929 (4th Cir.1984). That is the position espoused in the Restatement (Second) of Agency section 343 as to the tort liability of agents generally.

▆ Although we disagree with the district court's conclusions concerning the effect of the agency relationship on Hertz' tort liability, we uphold the dismissal of the negligence and breach-of-fiduciary-duty claims on another theory. In its motion for summary judgment, Hertz also urged that the negligence and breach-of-fiduciary-duty claims that Shivvers is now pursuing against it are the same claims that were advanced against its principals, the Zenor interests, in the Boone County litigation and were dismissed with prejudice. The Zenors stood in privity with Hertz and would have been liable to Shivvers if Hertz was liable. The Boone County litigation was terminated by a judgment requiring that all of Shivvers's claims for money damages be dismissed with prejudice.

▆ We recognized in *Kimmel v. Iowa Realty Co.,* 339 N.W.2d 374, 378 (Iowa 1983) (interpreting Restatement (Second) of Judgments § 51(1) (1982)), claim preclusion extends to nonparties in such vicarious liability relationships. Hertz' motion for summary judgment as to Shivvers's negligence claim and breach-of-fiduciary-duty claim should have been sustained on that ground. Although the judgment in the Boone County litigation was pursuant to a settlement agreement, consent judgments that are a bar to refiling are binding on both the parties and their privies. *Hoth v. Iowa Mut. Ins. Co.,* 577 N.W.2d 390, 391–92 (Iowa 1998); *State ex rel. Casas v. Fellmer,* 521 N.W.2d 738, 740

(Iowa 1994). In the defensive use of claim preclusion, the status test for privity is broadly applied if the party against whom claim preclusion is invoked had a full and fair opportunity to litigate the claim. *Penn v. Iowa State Bd. of Regents,* 577 N.W.2d 393, 398 (Iowa 1998).

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**

All justices concur except SNELL, J., McGIVERIN, C.J., and HARRIS and NEUMAN, JJ., who concur specially.

SNELL, Justice (specially concurring).

I believe the trial court should be affirmed based on long-accepted principles of contract and tort law. These principles would lead to affirmances as found by the trial court. Instead, the majority has appropriated specialized third-party beneficiary concepts arising in tort litigation and applied them to an auctioneering setting. In so doing, the majority has unwisely created new causes of action imposing damages on auctioneers and their attorneys for supposed negligence projected from tort concepts.

No cases have been cited by the majority even suggesting an attorney can be liable for negligence in tort to a bidder at auction. That is because none exist. An auctioneer's attorney owes no duty to auction bidders. The attorney's duty of care and professional obligation is owed solely to the client that contracted for those legal services. In this case, that client was the Zenor estate, a fact that was completely disclosed to Shivvers. Without a duty owed by attorney McKinney to Shivvers, as is the case here, there can be no liability.[1]

1. Unlike the majority's analysis, I cannot find that the omission of the easement by McKinney was within the instructions of his client, the Zenor estate. He readily admitted the omission of the easement was inadvertent. Nevertheless, I do not believe a cause of ac-

tion can arise from this in favor of Shivvers because of the exclusive attorney-client relationship between McKinney and the Zenor estate that admits of no duty to third-party beneficiaries.

The protection of her own interests that Shivvers desires and clamors to obtain by imposing imagined duties on others could and should have been realized by employing her own legal counsel. Lack of precautionary incentive should not provide a societal or judicial basis for obtaining retributive damages from others.

Regarding the claim of negligence against Hertz, I agree that the district court's summary, judgment for Hertz should be affirmed. I believe that claim preclusion bars Shivvers' claim here but do not accept as sound the route selected by the majority to reach this result. Here again the majority reaches out to extend liability for corporate tortious conduct to an auction setting. Although corporate officers as agents may be liable for tortious conduct in a situation where duties are owed, such is not the case where an auctioneer is acting for a disclosed principal. The auctioneer's duties arise out of contract with his or her employer. There is no duty owed to the bidding public. Thus, a negligence action in tort cannot be formulated from a vacuum.

McGIVERIN, C.J., and HARRIS and NEUMAN, JJ., join this special concurrence.