# IN THE COURT OF APPEALS OF IOWA

No. 24-0138
Filed July 2, 2025

JOY TRUEBLOOD, M.D.,
    Plaintiff-Appellant,

vs.

FINLEY, ALT, SMITH, SCHARNBERG, CRAIG, HILMES & GAFFNEY, P.C.
d/b/a FINLEY LAW FIRM, P.C.,
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Polk County, David Nelmark, Judge.

A plaintiff appeals the summary judgment ruling barring her third lawsuit arising out of a prior medical malpractice action where she was a named defendant. **AFFIRMED.**

Nicholas C. Rowley, Dominic F. Pechota, Clinton Ehrlich-Quinn (pro hac vice) (argued), and Chayce Glienke of Trial Lawyers for Justice, P.C., Decorah, for appellant.

Gregory M. Lederer (argued) and Alexandra C. Galbraith of Lederer Weston Craig PLC, Cedar Rapids and West Des Moines, for appellees.

Heard at oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**LANGHOLZ, Judge.**

This is the fourth lawsuit arising from a mistake in a medical clinic's pathology lab that led to a needless prostate-removal surgery. Dr. Joy Trueblood, the clinic's pathologist who handled the samples, has been a party to all four. In the first, she and the clinic were sued for medical malpractice. She conceded her error in deposition testimony and stipulated to her negligence at a trial on damages that resulted in an adverse jury verdict and eventually a post-trial settlement.

Trueblood then became a plaintiff. She initially sued the clinic's malpractice insurer—MMIC, Insurance Inc.—and one of its claims employees in Minnesota. She alleged MMIC should have settled sooner, pressured her to take the fall, and should have given her independent counsel. And she insisted she was not negligent, refuting her prior testimony. The court dismissed the suit and the Minnesota Court of Appeals affirmed. Next, Trueblood turned around and sued MMIC and its employee in Iowa, raising identical allegations and claims. That suit was also dismissed—and we affirmed—based on our obligation to give preclusive effect to the Minnesota judgment under the Full Faith and Credit Clause.

Undeterred, Trueblood now sues the Finley Law Firm—the firm hired by MMIC to defend the malpractice suit—raising the same factual allegations and substantially similar claims. But her third suit fares no better than the first two. Her claims all come from the same nucleus of operative facts and her alleged wrongs have all been raised before. So claim preclusion bars her third bite at the apple. What's more, her claims all turn on her assertion that she was not negligent. Yet judicial estoppel bars her from contradicting her prior testimony and stipulation. We thus affirm the district court's grant of summary judgment for Finley.

## I.   Factual Background and Proceedings

*The medical malpractice suit.*  "In 2016, a patient went to a medical clinic for prostate cancer screening.  A mix-up in the pathology lab caused the patient to receive another patient's biopsy results—results that showed prostate cancer. Believing he had cancer, the patient underwent prostate-removal surgery." *Trueblood v. MMIC Ins.*, 14 N.W.3d 163, 166 (Iowa Ct. App. 2024).  After the clinic discovered the error, the patient sued the clinic for medical malpractice.  *Id.* at 167. The clinic's insurer, MMIC, indemnified the clinic and hired Finley to defend the suit.  *Id.*

As the pathologist who handled and analyzed the biopsy results, Trueblood was deposed during litigation.  During that deposition, she testified under oath: "I believe what happened in this case was that I slid the pile towards the bar code scanner, and the requisition underneath it had just a little amount of bar code sticking out, and it flipped open the wrong patient.  That's what happened."  She explained this error has happened a handful of times over the years, but she normally catches the error and did not know why she did not catch it this time.  And she took complete responsibility for the misdiagnosis:

> Q.  . . . You're telling us that you're 100 percent responsible for communicating to [the doctor] that [the patient] had prostate cancer a hundred percent?  A.  Through the report, yes.
> Q.  But you're a hundred percent responsible?  A.  Yes.
> Q.  It's no one else's fault?  A.  Correct.
> Q.  It's not [the doctor's] fault or his staff?  A.  Correct.
> Q.  [The patient] didn't do anything wrong?  A.  Correct.
> Q.  Has this always been your position that you were a hundred percent responsible for this?  A.  Yes.
> Q.  When did you first arrive at that opinion that you were a hundred percent responsible?  A.  When I picked up the slides from [the patient] and realized that the diagnosis wasn't cancer.

4

After the deposition, the patient added Trueblood as a named defendant. The case progressed toward trial and the parties nearly reached a settlement, but the patient retracted his prior demand. *Id.* Because of Trueblood's deposition, the parties stipulated to negligence and tried the damages issue to a jury. The jury returned a verdict for $12.5 million and the case later settled for $9 million, "all of which was covered by the MMIC insurance policy. Neither Trueblood nor the clinic ever paid out of pocket for the award or the lawsuit's defense." *Id.*

*The Minnesota MMIC suit.* Almost a year later, Trueblood sued MMIC and one of its employees. She alleged MMIC "directed the frivolous defense" of the lawsuit, "improperly pressured [her] to take 100% of the blame" during her deposition, "failed to hire separate counsel for Dr. Trueblood where there was a clear conflict of interest," and unreasonably refused to settle the case. Trueblood also claimed for the first time that, despite her testimony and stipulation, she did not negligently handle the samples and she suffered emotional distress from watching a jury trial where she was falsely painted as negligent. For these wrongs, she sued MMIC and its employee for bad faith, breach of fiduciary duty, and intentional infliction of emotional distress. She also sought punitive damages.

The Minnesota district court, applying Minnesota law over Trueblood's request to apply Iowa law, dismissed the suit for failure to state a claim. *Id.* The Minnesota Court of Appeals affirmed, finding Minnesota law governed and that Trueblood's torts were not cognizable under Minnesota law. *Id.* at 168; *see also Trueblood v. MMIC Ins.*, No. A21-0452, 2021 WL 5764582, at *2–4 (Minn. Ct. App. Dec. 6, 2021).

*The Iowa MMIC Suit.* Six months later, Trueblood filed a second lawsuit against MMIC and its employee, this time in Iowa district court. Trueblood again accused MMIC of directing a frivolous defense, pressuring her to take the blame during her deposition, failing to hire independent counsel for her, and refusing to settle the case before trial. She again insisted she was not negligent and sought damages for watching a trial that falsely painted her as negligent. And she again sued for bad faith, breach of fiduciary duty, and intentional infliction of emotional distress. The Iowa district court granted summary judgment, holding that the Full Faith and Credit Clause precluded Trueblood's second suit. *Trueblood*, 14 N.W.3d at 168. And we affirmed. *Id.* at 173.

*The Finley Suit.* While that appeal was pending, Trueblood filed another lawsuit, this time against Finley. Trueblood alleged that Finley mounted a "frivolous" defense of the suit, "improperly pressured [her] to take 100% of the blame" during her deposition, "failed to provide her with her own lawyer," failed to advise her of the need for her own lawyer, and unreasonably refused to settle the case. She also again insisted she was not negligent and claimed emotional distress from watching a trial where she was falsely painted as negligent. For these wrongs, she sued Finley for legal malpractice, breach of fiduciary duty, intentional infliction of emotional distress, and breach of contract.

The overlap between the Finley suit and the prior MMIC suits is substantial. While many of the factual allegations are repeated verbatim—often merely swapping MMIC with Finley—comparing the specific allegations of wrongdoing within each cause of action is instructive:

| The Iowa MMIC Petition | The Finley Petition |
|---|---|
| 54. Defendants MMIC and [its employee] breached their duty of good faith by **failing to conduct a proper investigation**, by **failing to subject the findings of its investigation to reasonable evaluation and review**, by **failing to reasonably settle the case** of [the patient] and by **improperly pressuring Dr. Trueblood to accept responsibility** for events that were not her fault. She was also **not provided her own independent lawyers where a conflict of interest existed**. | 42. Finley Law Firm was negligent by . . . a. **Failing to conduct a proper investigation**; b. **Failing to subject the findings of its investigation to a reasonable evaluation and review**; c. **Failing to reasonably settle the case** of [the patient]; d. **Improperly pressuring Dr. Trueblood to accept responsibility** for events that were not her fault; e. Failing to advise Dr. Trueblood that **a conflict of interest existed** between her interests in [the] matter and the interests of MMIC, and co-defendant the Iowa Clinic; f. Failing to advise Dr. Trueblood that **she should seek separate and independent legal counsel**. |
| 61. MMIC and [its employee] were under a duty to provide coverage to Dr. Trueblood, and **a fiduciary duty existed** between the parties. Dr. Trueblood was also **not provided her own independent lawyers to defend her where a clear conflict of interest existed**. | 47. [A] **fiduciary relationship existed** between Dr. Trueblood and the Finley Law Firm.<br><br>49. Dr. Trueblood was recklessly and/or intentionally not **provided with her own independent counsel where a clear conflict of interest existed**. |
| 67. **[MMIC] intentionally caused emotional distress** or acted with reckless disregard of the probability of causing emotional distress to Plaintiff Dr. Trueblood. She **had to go through avoidable litigation and sit through the horror of a jury trial** . . . . | 54. **[Finley] intentionally caused Dr. Trueblood to suffer emotional distress** by acting recklessly and/or intentionally. Dr. Trueblood **had to endure avoidable litigation and sit through the horrors of an unnecessary jury trial** as a guilty Defendant. |

Finley moved for summary judgment, raising claim preclusion, issue preclusion, and judicial estoppel. The district court granted the motion. First, it found all of Trueblood's claims were grounded in the same transaction as the prior

two MMIC lawsuits, so claim preclusion prohibited her suit. And second, the court reasoned "the assertion that she was not negligent in the underlying medical malpractice proceeding forms the basis for all her causes of action against Finley," so judicial estoppel also prohibited her suit.

Trueblood now appeals. We generally review summary-judgment rulings for legal error, *see Villarreal v. United Fire & Cas. Co.*, 873 N.W.2d 714, 719 (Iowa 2016), but review the court's application of judicial estoppel for abuse of discretion, *see Tyson Foods, Inc. v. Hedlund*, 740 N.W.2d 192, 195 (Iowa 2007).

## II. Claim Preclusion

Claim preclusion bars piecemeal litigation, requiring parties to "try all issues growing out of the claim at one time and not in separate actions." *Bennett v. MC No. 619, Inc.*, 586 N.W.2d 512, 517 (Iowa 1998). When assessing claim preclusion, we generally follow the Restatement (Second) of Judgments. *Villarreal*, 873 N.W.2d at 719. Under this approach, a claim is coextensive with the "transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments, § 24(1) (Am. L. Inst. 1982). Because the underlying "transaction is the basis of the litigative unit or entity which may not be split," claim preclusion broadly forbids pursuing new substantive theories of liability or forms of relief arising out of a "common nucleus of operative facts." *Id.* § 24 cmts. a, b; *see also Schumaker v. Iowa Dep't of Transp.*, 541 N.W.2d 850, 852 (Iowa 1995). So successive claims are "likely to be considered precluded if the acts complained of, and the recovery demanded, are the same, or when the same evidence will support both actions." *Whalen v. Connelly*, 621 N.W.2d 681, 685 (Iowa 2000) (cleaned up).

Reducing these principles into discrete elements, to preclude a later suit, the party asserting claim preclusion must show: "(1) the parties in the first and second action are the same parties or parties in privity, (2) there was a final judgment on the merits in the first action, and (3) the claim in the second suit could have been fully and fairly adjudicated in the prior case." *Pavone v. Kirke*, 807 N.W.2d 828, 836 (Iowa 2011). The parties dispute the first and third elements.

*Privity*. "In the defensive use of claim preclusion, the status test for privity is broadly applied if the party against whom claim preclusion is invoked had a full and fair opportunity to litigate the claim." *Shivvers v. Hertz Farm Mgmt., Inc.*, 595 N.W.2d 476, 481 (Iowa 1999). And in the litigation context, a "privy" includes "someone whose interests are represented by a party to the lawsuit." *Privy*, Black's Law Dictionary (12th ed. 2024).

Trueblood insists there is no privity between MMIC and Finley because MMIC would not always be vicariously liable for Finley's conduct. *See Shivvers*, 595 N.W.2d at 481 (noting claim preclusion can extend to "nonparties" in "vicarious liability relationships"). But our inclusive approach to privity for defensive claim preclusion favors finding privity here.

Privity has often been found between attorneys and their clients when attorneys are sued for actions taken within the scope of their representation. *See, e.g.*, *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000) ("The law firm defendants appear by virtue of their activities as representatives of Green and AT & T, also creating privity."); *Berkshire Invests. LLC v. Taylor*, 278 P.3d 943, 951 (Idaho 2012) (finding attorneys in privity with clients when attorneys were sued in second suit "solely for their alleged conduct" in representing the clients); *Henry v.*

*Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986) (finding a bank was the only party to the prior proceeding but "attorneys of the Bank[] are in privity with the Bank for purposes of res judicata"); *Verhagen v. Arroyo*, 552 So. 2d 1162, 1164 (Fla. Dist. Ct. App. 1989) (barring second suit against attorney and law firm who represented the defendants in the underlying conduct litigated during the first suit, finding the attorney and firm "for collateral estoppel purposes, in privity with the defendants" from the first suit); *Clemens v. Wells Fargo Bank N.A.*, No. 14-4020-JTM, 2014 WL 7407603, at *3 (D. Kan. Dec. 30, 2014) ("[F]or purposes of the 'same party' element of res judicata, attorneys subjected to suit for their actions in previous litigation are deemed in privity with their clients."). Indeed, a panel of our court has found privity between an attorney and his client when the attorney was sued for his conduct while representing the client. *See Butler v. Wells Fargo Bank, N.A.*, No. 18-0654, 2019 WL 2375230, at *4 (Iowa Ct. App. June 5, 2019).

We also find it significant that Trueblood's first two lawsuits pleaded the same alleged misconduct she pleads here—often directly accusing "the lawyers employed by MMIC" of also participating—yet Trueblood withheld Finley as a defendant until both prior suits failed. In similar contexts, courts have found sufficient mutuality of interest to bar the later suit. *See, e.g.*, *In re El San Juan Hotel Corp.*, 841 F.2d 6, 10 (1st Cir. 1988) (finding trustee's attorney in privity with trustee and that claim preclusion was appropriate when "the new defendants have a close and significant relationship with the original defendants, such as when the new defendants were named as conspirators in the first proceeding but were not joined in the action"); *Gambocz v. Yelencsics*, 468 F.2d 837, 842 (3rd Cir. 1972)

(barring second suit when "what was averred in the original action was a conspiracy participated in by named individuals, and the sole material change in the later suit was the addition of certain defendants, some of whom had been named in the original complaint as participating in the conspiracy but had not been named as parties defendant at that time" because "the relationship of the additional parties to the second complaint was so close to parties to the first that the second complaint was merely a repetition of the first cause of action"); *see also Jackson v. Fye Excavating, Inc.*, No. 20-0962, 2021 WL 4592256, at *2–3 (Iowa Ct. App. Oct. 6, 2021) (finding first element of claim preclusion satisfied when plaintiff asserted the same wrongdoing and only swapped the party alleged responsible, who was known to the plaintiffs at the time of the first suit).

Trueblood points us to *Penn v. Iowa State Board of Regents*, where a student was found not in privity with the University of Northern Iowa based on filing a sexual-harassment complaint with the university. 577 N.W.2d 393, 396–99 (Iowa 1998) (per curiam). After the University prevailed in a § 1983 action by the accused professor on statute of limitations grounds, the professor sued the student. *Id.* at 396. Our supreme court held the student could not invoke claim preclusion to bar the second suit, as the student had "no direct affiliation with the University" and could not claim privity based on a "common interest in a prior judgment alone." *Id.* at 399.

Here, conversely, Finley has a direct affiliation with MMIC, as all of its actions were done in the scope of Finley's representation. More than that, Trueblood largely faults Finley for conduct that is solely attributable to MMIC—declining to settle earlier, choosing to go to trial, and failing to hire independent

counsel.  So Finley is invoking claim preclusion based on more than just a common interest in the prior judgment—there is substantial mutuality of interest between Finley and MMIC for these claims.  Thus, we find the first element satisfied here.

*Fully and Fairly Adjudicated.*  Because Trueblood does not contest that the prior lawsuits ended in final decisions on the merits, we proceed to the third element: whether her new claims were or could have been fully and fairly adjudicated in either of the prior MMIC lawsuits.

To assess this element, we ask whether Trueblood is bringing the same claim as the prior suits.  *Pavone*, 807 N.W.2d at 837.  To that end, we consider "(1) the protected right, (2) the alleged wrong, and (3) the relevant evidence."  *Id.* (cleaned up).  As the Restatement frames it, a transaction "connotes a natural grouping or common nucleus of operative facts."  Restatement (Second) of Judgments, § 24 cmt. b.  And when there is "substantial overlap" in "the witnesses or proofs" for the first and second action, "the second action should ordinarily be held precluded."  *Id.*

Trueblood devotes minimal attention to this question.  Indeed, she cites no caselaw in support of her argument.  *See* Iowa R. App. P. 6.903(2)(a)(8)(3) (failing to cite authority may waive an issue).  And the sparse discussion in her briefing merely asserts (1) her specific causes of action against Finley are different from those brought against MMIC, (2) Finley owed Trueblood a discrete legal duty, and (3) Minnesota had no personal jurisdiction over Finley.

Her first two points are immaterial—claim preclusion applies with equal force to new causes of action or legal theories raised in a later suit.  Restatement (Second) of Judgments, § 24 cmts. a, b*; Westway Trading Corp. v. River Terminal*

*Corp.*, 314 N.W.2d 398, 401 (Iowa 1982) ("A plaintiff is not entitled to a second day in court simply by alleging a new ground of recovery for the same wrong."). And her third point only gets her halfway. Even assuming personal jurisdiction prevented her from suing Finley the first time in Minnesota, Trueblood does not explain why she did not sue Finley the second time in Iowa.

At bottom, Trueblood's third suit is a repackaged version of her first two. Trueblood's claimed wrongs—that she was pressured, denied independent counsel, and forced to watch a jury trial as a named defendant—have all been raised before. This suit arises from the same nucleus of operative facts as the first two, and claim preclusion prevents her third bite at the apple. Thus, we affirm summary judgment for Finley.

## III.   Judicial Estoppel

Even if claim preclusion did not bar Trueblood's suit, she runs into another barrier—judicial estoppel. A party "who has successfully and unequivocally asserted a position in one proceeding" may not assert "an inconsistent position in a subsequent proceeding." *Vennerberg Farms, Inc. v. IGF Ins.*, 405 N.W.2d 810, 814 (Iowa 1987). The doctrine safeguards "the integrity of the judicial process by preventing deliberately inconsistent—and potentially misleading—assertions from being successfully urged in succeeding tribunals." *Wilson v. Liberty Mut. Grp.,* 666 N.W.2d 163, 166 (Iowa 2003). Here, Trueblood twice conceded liability during the medical malpractice suit—first testifying that she committed the error during her deposition and then formally stipulating to negligence as a party during trial.

Trueblood insists her prior testimony and stipulation are irrelevant to her new causes of action, but all of her claims turn on her assertion that she was not

at fault for, and did not negligently cause, the patient's misdiagnosis. Indeed, her legal-malpractice, breach-of-fiduciary-duty, and breach-of-contract claims are all grounded in an alleged conflict between her interest—protecting her professional reputation—and the interests of MMIC and the clinic—blaming Trueblood for the lab error "to take the heat off of the larger client," the medical clinic. But that conflict only exists if Trueblood was in fact blameless. *See* Iowa R. Prof'l Conduct 32:1.7(a)(1), (2) (defining concurrent conflicts of interest). While conflicts may arise when attorneys are retained by an insurer to represent the insured, *see generally id.*, cmt. 13a, in many cases the interests of the insured and insurer are "in near-perfect congruence," *see* 16 Gregory S. Sisk & Mark S. Cady, Iowa Practice Series: Lawyer and Judicial Ethics § 5:7(d)(6) (updated July 2024). And under Trueblood's theory of the case, Trueblood's interests were only pitted against the clinic or MMIC if a factfinder believes she was not responsible for the lab error. So too does her intentional-infliction-of-emotional-distress claim require finding she was not negligent, as her claim is centered on wrongly enduring a jury trial as "a guilty defendant." Thus, Trueblood's claims squarely contradict her prior sworn testimony and formal stipulation that she committed the error and was liable for negligence.

To avoid judicial estoppel, Trueblood makes three arguments. First, she says her testimony should be disregarded because Finley caused her to testify falsely. Yet Trueblood's summary-judgment affidavit only states that she was "pressured" to "accept full responsibility for the medical error." She does not explain how she was pressured, what was said to her, or who said it. And a bare allegation of "pressure" does not rise to the level of fraud or duress normally

required to set aside sworn statements. *Cf. State v. Reed*, 252 N.W.2d 455, 456 (Iowa 1977) (declining to set aside plea, finding it knowingly and voluntarily made despite defendant's claim that it was "the result of 'pressure'"); *see also McKay v. Owens*, 937 P.2d 1222, 1228–29 (Idaho 1997) (applying judicial estoppel to bar legal malpractice action despite plaintiff's assertion that the lawyers "'forced' her to lie in court").

Second, Trueblood believes there is a fact dispute over the meaning of her prior testimony. But the substance of Trueblood's prior testimony is undisputed—she handled the biopsy samples and she alone was responsible for the misdiagnosis. While she now tries to write off her concessions as "conjecture on [her] part," her actual testimony was not so speculative. Indeed, she ended her description of her error with "That's what happened." So Trueblood may not now distort her testimony to avoid its consequences. Nor can there be any dispute that Trueblood stipulated at trial that her conduct was negligent.

And third, Trueblood argues she never received "any advantage or benefit" from her prior testimony, so judicial estoppel should not apply. But while our approach to judicial estoppel is "flexible," there is no requirement that Trueblood receive a tangible benefit or advantage from her prior position. *Tyson Foods*, 740 N.W.2d at 196. And even if there were, we agree with the district court that Trueblood gained advantages because her testimony and stipulation to negligence shortened the trial, reduced legal fees, and avoided a potentially damaging cross-examination.

Because Trueblood testified to committing the error and stipulated to negligence during the malpractice case, she is estopped from disputing her liability

in this case. *See Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 573–75 (Iowa 2006) (finding employer estopped from disputing workers' compensation liability after admitting liability earlier in the proceeding); *Wilson*, 666 N.W.2d at 165–67 (applying judicial estoppel to dismiss employee's bad-faith claim against insurer based on refusal to settle after conceding during the workers' compensation proceeding that a "bona fide dispute" existed over the insurer's coverage). Thus, we agree that judicial estoppel bars Trueblood's suit against Finley and summary judgment was appropriately granted on this basis as well.

**AFFIRMED.**