# IN THE COURT OF APPEALS OF IOWA

No. 3-1178 / 13-0870
Filed March 26, 2014

**RAVI SOOD, M.D.,**
      Plaintiff-Appellant,

**vs.**

**UNIVERSITY OF IOWA, and THE BOARD OF
REGENTS FOR THE STATE OF IOWA,**
      Defendants-Appellees,

and

MICHAEL M. GRAHAM, Ph.D., M.D.,
As Director of Nuclear Medicine for the
University of Iowa Carver College of
Medicine, and Individually,
      Defendant.
_____

Appeal from the Iowa District Court for Johnson County, Carl D. Baker, Judge.

Ravi Sood appeals the district court's ruling that his breach-of-contract claim against the University of Iowa and the Board of Regents for the State of Iowa is barred by failure to exhaust administrative remedies. **AFFIRMED.**

Laura L. Folkerts and Chad A. Swanson of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, and George A. Carroll and Jordan G. Esbrook, Assistant Attorneys General, for appellees.

Heard by Danilson, C.J., and Vaitheswaran and Mullins, JJ.

**DANILSON, C.J.**

Dr. Ravi Sood appeals the district court's ruling dismissing for failure to exhaust administrative remedies his breach-of-contract claim against the University of Iowa and the Board of Regents for the State of Iowa. Finding no error in the court's conclusion that the claim involved covered agency action subject to exhaustion requirements of the Iowa Administrative Procedure Act, we affirm.

**I. Background Facts and Proceedings.**

This case stems from events that occurred in 2008 and 2009. The following undisputed facts appear in the record.

In a letter dated July 14, 2008, the department of radiology of the University of Iowa Carver College of Medicine offered Ravi Sood a "full-time non tenure-track appointment as a Visiting Associate for the period of one year beginning July 14, 2008" with an annual salary of $100,000. The letter also stated, "You will have full clinical privileges in Nuclear Medicine," and "your appointment may be renewed for one additional year." Sood accepted the offer on July 17, 2008.

On June 28, 2008, Sood applied for "initial" clinical privileges for University of Iowa Hospitals and Clinics' (UIHC) radiology department. He began working at the University as a visiting associate in July 2008. On October 1, 2008, the University Hospital Advisory Committee granted Sood full clinical privileges "subject to the conditions specified in the Bylaws, Rules and Regulations of the University of Iowa Hospitals and Clinics and its Clinical Staff." According to the Bylaws, "[a]ll initial clinical privileges shall be provisional for the first three

months"; and "[i]f . . . termination[ ] of clinical privileges is recommended, the recommendation shall be handled as provided in Section 6."

On October 28, 2008, Sood was informed by a letter authored by Michael M. Graham, Ph.D., M.D. (Director of Nuclear Medicine for the Carver College of Medicine at the University of Iowa) that Graham "propose[d] that we reduce your status to that of fellow without clinical privileges, although you will retain the title of 'clinical fellow' and current salary." The letter noted, "[W]e will not be renewing your appointment after June 30, 2009."

Also on October 28, Dr. Graham told Nancy Harney of human resources that he no longer wanted Sood to have clinical privileges. Harney emailed Graham's request to Deb Strabala in the clinical staff office, July Harland in business office, and Tyler Artz, the director of the radiology department, that they "need[ed] to make a change in the status of Ravi Sood, M.D., effective immediately."

In a letter dated November 3, Sood was informed that his "appointment in the Department of Radiology ended on October 31, 2008. In accord with the 'Bylaws of the [UIHC] and its Clinical Staff,' your clinical staff membership and privileges at the [UIHC] also end on the same date."

On November 26, 2008, Sood again applied for "initial" clinical privileges for the UIHC radiology department, which were granted by the University Hospital Advisory Committee on January 7, 2009. Sood's employment with the University ended June 30, 2009. Sometime in June 2009, Sood learned that an application he had submitted for employment elsewhere was no longer being processed due to a "gap" in his privileges.

On January 22, 2010, Sood filed a petition against the University of Iowa, the Board of Regents, and Dr. Graham,[1] alleging three counts: breach of contract, violation of procedural due process, and violation of Iowa Code section 91A.6 (2009) (a provision of the Iowa Wage Payment Collection Law).[2] The breach of contract claim alleged the University had violated the written contract of employment and as a result Sood had suffered damages.

With respect to the breach of contract, Sood asserted four specific breaches of the contract at issue here: Sood had not been provided full-time employment; his status with billing privileges had been changed; he had not been paid the promised annual salary of $100,000; he was not provided full clinical privileges; and the defendants had not followed the process and procedures outlined in the bylaws. In their answer, the defendants raised as one of their affirmative defenses the failure to exhaust administrative remedies.

On March 1, 2013,[3] the University filed a motion for partial summary judgment as to Sood's breach-of-contract count. The University asserted the matters involved in the breach-of-contract count constitute "agency action" within the meaning of Iowa Code chapter 17A (Iowa Administrative Procedure Act), and that pursuant to Iowa Code section 262.7(1), Sood's employment was governed by the Iowa Board of Regents,[4] which had adopted administrative rules and procedures governing personnel administration. *See* 681 Iowa Admin. Code

---

[1] Unless otherwise specified, we will refer to the University, the Board of Regents, and Dr. Graham collectively as "the University."

[2] The third count—the contention that the University had violated Iowa Code section 91A.6—had been dismissed at the time of the hearing on the motion for summary judgment.

[3] The case was continued on at least two occasions due to lack of judicial resources.

[4] Section 262.7 sets out the institutions governed by the board of regents, including the University of Iowa and the UIHC.

ch. 3. The University argued that because Sood's fitness to be employed at the UIHC was within the board's administrative purview, Sood's remedy for his breach-of-contract claim was through agency action.

Sood resisted, contending chapter 17A does not apply to his breach-of-contract claim for failure to pay wages because the claim does not involve an issue normally within the Regents' expertise. He also argued there are no available administrative remedies with respect to clinical privileges because the Bylaws explicitly remove clinical privileges from the grievance procedures of Section III-29.6 of the University's operations manual.[5]

The district court ruled:

> There do not appear to be any disputed facts; rather, the question before the Court is a purely legal one. Is Plaintiff [Sood] required to exhaust administrative remedies regarding his breach of contract claim? The Court concludes the answer to this question is

---

[5] The grievance provision of III-29.6 reads in part:
(1) Scope. The procedures described in this section constitute the exclusive remedy within the University for a faculty member who wishes to challenge the legitimacy of some University administrative action or non-action that affects the faculty member, except for a complaint about:
(a) a decision to deny the faculty member tenure, promotion, or reappointment (which falls under III-29.5) or a decision to terminate a clinical faculty member, or to deny promotion or reappointment to a clinical faculty member (which falls under III-29.9);
(b) any action insofar as it was taken under the Regents Rules;
(c) any action or non-action insofar as it is subject to the Iowa Tort Claims Act; or
(d) any action or non-action on any ground other than one or more of the grounds stated in paragraph (2) below.
(2) Grounds for a Challenge to the Legitimacy of some Administrative Action or Non-Action. A challenge by a faculty member to the legitimacy of some University administrative action or non-action that affects the faculty member may be made through these procedures only on one or more of the following grounds:
(a) Violation of a University Obligation: that the action or nonaction is in violation of a written promise to the faculty member by an authorized administrator of the University, . . . .

yes. The agency action in this case was the decision to terminate Dr. Sood's clinical privileges and reduce his pay. This action was taken based upon a perceived below-standard job performance. Assuming, arguendo, that Dr. Graham failed to follow hospital rules and regulations in doing so, his action falls within "the performance of an agency duty or the failure to do so." Iowa Code Section 17A.2([2]). This case is most like the *Papadakis* [*v. Iowa State University of Science & Technology*, 574 N.W.2d 258 (Iowa 1997),] case. As in *Papadakis*, the "personnel issues of the type involved in the present case have been made the subject of a prescribed administrative procedure undertaken in conformance with express statutory authorization." *Papadakis*, 574 N.W.2d at 260. The breach of contract claim stated by [Sood] pertains to his fitness to be employed at UIHC, and the Board has the right to oversee [Sood's] appointment and compensation. The Court finds that this oversight includes review of the level of care to be exercised by [Sood] in his employment, as well as the clinical privileges afforded to [Sood]. [Sood's] remedy for his breach of contract claim is through agency action. This case is unlike *Hornby* [*v. State*, 559 N.W.2d 23 (Iowa 1997)], in that the action challenged in the case at bar involves Plaintiff's job performance, which is an area within the expertise of the Board of Regents.

Therefore, [Sood's] breach of contract claim shall be dismissed because Plaintiff has not exhausted the administrative remedies available to him.

With respect to the parties' arguments regarding Plaintiff's right to grieve the employment decision, the Court concludes that because the clinical privileges afforded to Plaintiff were part of his employment contract, the alleged gap in those privileges upon which Plaintiff partially relies in stating his breach of contract claim also is a component of Plaintiff's employment that is within the expertise of the Board of Regents. Therefore, all issues relating to Plaintiff's clinical privileges also were subject to the exhaustion of administrative remedies requirement.

The district court entered summary judgment for the University of Iowa and the Board of Regents on the breach-of-contract count.

Sood filed a motion to enlarge or amend the partial summary judgment ruling, asserting in part that he had no administrative remedy because the Bylaws exempt the grievance procedure to claims about clinical privileges. The district court stated Sood was "correct in asserting that, because the bylaws,

rules and regulations were not followed by Dr. Graham, other events did not occur," which included a failure to follow the process provided by the bylaws. The court ruled,

> Dr. Sood was granted full clinical privileges in Nuclear Medicine when he was hired in 2008. The University's failure to follow the Article IV procedure is agency action as defined in Iowa Code section 17.A.2(9). The Defendants failed to act in accord with their own bylaws, rules and regulations with respect to Dr. Sood's clinical privileges. The termination of clinical privileges and the failure to follow the bylaws in doing so, bears "a discernible relationship to the statutory mandate of the agency as evidenced by express or implied statutory authorization." *Papadakis v. Iowa State University of Science and Technology*, 574 N.W. 2d 258 (Iowa 1997).
>
> When hired, Dr. Sood was advised of the bylaws, rules and regulations of the University of Iowa Hospitals and Clinics. He was required to follow the procedures therein.
>
> The Court concludes that Dr. Sood must first challenge the failure to act by the University through administrative procedures.

Sood appeals.[6]

## II. Scope and Standard of Review.

We review the district court's summary judgment ruling for errors at law. *Osmic v. Nationwide Agribusiness Ins. Co.*, 814 N.W.2d 853, 858 (Iowa 2014). The district court properly grants summary judgment when the moving party demonstrates there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3). "'We can resolve a matter on summary judgment if the record reveals a conflict concerning

---

[6] Sood appealed "all adverse rulings and orders" "with respect to the Breach of contract claim against Defendant University of Iowa and the Board of Regents for the State of Iowa." Trial against Dr. Graham on Sood's claim of violation of due process proceeded to trial and ended with a judgment for Sood. The appeal from that judgment was filed on December 6, 2013. On January 21, 2014, the supreme court denied the University's motion to consolidate the two appeals.

only the legal consequences of undisputed facts.'" *Osmic*, 814 N.W.2d at 858 (citation omitted).

### III. Discussion.

There is no dispute that the University of Iowa and the Board of Regents fall within the definition of an administrative agency. *See* Iowa Code § 17A.2(1) ("'Agency' means each board, commission, department, officer or other administrative office or unit of the state."); *Press-Citizen, Co. v. Univ. of Iowa*, 817 N.W.2d 480, 489 n.8 (Iowa 2012) (noting the University of Iowa is an agency within the meaning of section 17A.2). Consequently, if an aggrieved party has an administrative remedy, that party is required to pursue that remedy before resorting to the courts. *See* Iowa Code § 17A.19(1).

Sood concedes that if his breach-of-contract count involves covered "agency action" under chapter 17A, then he must first exhaust his administrative remedies prior to bringing suit. *See Hornby*, 559 N.W.2d at 24 ("Iowa Code section 17A.19(1) requires a party to 'exhaust[ ] all adequate administrative remedies' prior to bringing an action in court to challenge 'agency action.'").

Iowa Code section 17A.2(2) defines "agency action" as including

> the whole or a part of an agency rule or other statement of law or policy, order, decision, license, proceeding, investigation, sanction, relief, or the equivalent or a denial thereof, or a failure to act, or any other exercise of agency discretion or failure to do so, or the performance of any agency duty or the failure to do so.

This "broad" definition encompasses matters "within the statutory mandate of the agency . . . and [which] are peculiarly within its discretion and area of expertise." *Genetzky v. Iowa State Univ.*, 480 N.W.2d 858, 861 (Iowa 1992)

(finding decision whether to grant tenure and the criteria used to guide that decision constituted agency action).

However, matters that bear "scant relation to the agency's statutory mandate or supposed area of expertise" may lie outside that definition. For instance, in *Jew v. University of Iowa*, 398 N.W.2d 861, 864 (Iowa 1987), the court concluded a sexual harassment claim filed by a university professor against the university and board of regents was not exclusively restricted to administrative agency review because the action alleged to be contrary to law had very little connection with university's mandate or its supposed area of expertise, and therefore was not agency action.

The Board of Regents is statutorily required to govern the UIHC. Iowa Code § 262.7(7). The Board is also required to employ professors, instructors, officers, and employees and fix their compensation. *Id.* § 262.9(2). The Board is also obligated to make rules for the government of the institutions under its control. *Id.* § 262.9(3).

*A. Agency action.* Sood contends this action is governed by *Hornby*, which he argues held that a claim for failure to pay wages was not barred for failure to exhaust administrative remedies because it does not involve matters normally within the regent's expertise.

Sood mischaracterizes the holding in *Hornby.* The supreme court ruled in *Hornby* that a claim for failure to pay long-term disability benefits did not require exhaustion of administrative remedies because there was no administrative program for long-term disability benefits, nor any administrative rules to process

complaints that such benefits had been wrongly denied.[7]   559 N.W.2d at 25. Because there was no review procedure provided by rule, the claimant could not be faulted for failing to follow such a procedure.  *Id.* ("Joyce should not be faulted for failing to exhaust a review procedure that was not provided by rule.").

Unlike *Hornby* (where the claim involved a failure to pay benefits for which there were no administrative procedures), numerous administrative processes, procedures, and rules exist to address the matters about which Sood complains. For example, the Board of Regents has adopted extensive rules governing personnel administration.  *See* 681 Iowa Admin. Code ch 3.  Also pertinent are the grievance procedures provided in the University's operations manual. Section III-29.6 of the operations manual states, "The procedures described in this section constitute the *exclusive* remedy within the University for a faculty member who wishes to challenge the legitimacy of some University administrative action or non-action," including a "violation of a written promise to the faculty member by an authorized administrator of the University."  Sood does not explain how his claim that the University breached it written promise to pay him $100,000 does *not* fall within this rule.  And finally, as Sood himself states, "The [UIHC] Bylaws describe all aspects of clinical privileges . . . [and] lay out the process by which clinical privileges can be reduced, suspended or terminated."

Sood argues, however, there are no administrative remedies for his claims concerning clinical privileges because the UIHC's bylaws, rules, and regulations

---

[7] It is true the court found that long-term disability payments were "wages" for purposes of Iowa Code chapter 91, the Iowa Wage Payment Collection Law."  *See Hornby*, 559 N.W.2d at 25.  But Sood's suggestion that the *Hornby* case stands for the proposition that wage claims are exempt from administrative exhaustion requirements reads the decision too broadly.

specifically exempt any action concerning clinical privileges from the section III-29.6 of the operations manual. Even if we accept that the exemption stated in the bylaws eliminates the grievance procedure with respect to matters relative to clinical privileges, this exemption only eliminates the operations manual grievance procedure. That procedure is replaced by sections four through six of the UIHC's bylaws, rules, and regulations, which govern the grant, modification, and termination of clinical privileges. Those rules, processes, and procedures include the right to a hearing and the right to appeal to the Hospital Advisory Committee. The failure to follow such procedures would constitute a violation of a university obligation, which presumably would be subject to grievance procedures.

In *Papadakis*, an Iowa State University faculty member appealed from a district court's ruling that his contract dispute with the university must be resolved through the administrative and judicial review procedures of Iowa Code chapter 17A. 574 N.W.2d at 258. Papadakis was employed as a research scientist whose terms of employment were embodied in a written letter of appointment. *See id.* The director of Papadakis's unit sent him a letter terminating his rolling tenure appointment effective on a date certain, and stopped paying his salary on that date. *Id.* Papadakis sought a declaratory judgment that his employment extended beyond the date asserted by the university by virtue of a later letter. *Id.* at 259. The district court dismissed the contract claims, concluding the claims involved agency action. *Id.*

On appeal, the supreme court noted:

> State agencies must necessarily contract with members of the public to obtain needed goods and services. We have recognized that the state is legally responsible for its contractual obligations in an action to enforce such agreements. *See Kersten Co. v. Dep't of Soc. Servs.*, 207 N.W.2d 117, 122 (Iowa 1973). We do not believe that it was the intent of the legislature in enacting chapter 17A to relegate all contractual claims against the state to an administrative determination. [(citing *Hornby*)]

*Papadakis*, 574 N.W.2d at 260.

The *Papadakis* court concluded that in order for an action or inaction by an agency to be reviewable only under the procedures of chapter 17A, "the action or inaction in question must bear a discernible relationship to the statutory mandate of the agency as evidenced by express or implied statutory authorization." *Id.* On appeal, our supreme court found that a university's termination of a faculty member's salary and benefits constituted "agency action" within the meaning of section 17A.2(2). *Id.*

The University's professional and scientific personnel are under the jurisdiction of the board of regents. Iowa Admin. Code r. 681-3.2. Iowa Code section 8A.412(5) specifically exempts such "professional and scientific personnel" from the merit system applicable to other state employees. *See Papadakis*, 574 N.W.2d at 260 (discussing predecessor statute, Iowa Code § 19A.3(5)). As observed in *Papadakis*, "Iowa Administrative Code rule 681–3.129(1) allows individual institutions such as [the University of Iowa] to establish their own grievance and appeal policies." 574 N.W.2d at 260. The board has adopted personnel rules that specify in detail how appointments of professional and scientific personnel shall be made, how such employment shall be terminated, and establish a grievance and appeal procedure under which

affected employees can challenge agency action that is adverse to them. *See* 681 Iowa Admin. Code chs. 3, 12; *Papadakis*, 574 N.W.2d at 260.

UIHC's policies and procedures are found in its bylaws, rules, and regulations. Qualifications of potential staff membership are enumerated therein. How a staff member obtains and retains clinical privileges is governed by the bylaws, rules, and regulations. Procedures concerning clinical privileges, "corrective action," and appellate review are included. We, like the district court, conclude the type of controversy involved in the present case has been relegated to an administrative process, which Sood must pursue before resorting to the courts. *See Papadakis*, 574 N.W.2d at 260 (concluding the personnel issues involved were "made the subject of a prescribed administrative procedure undertaken in conformance with express statutory authorization").

Sood's attempts to distinguish his claims from those in *Papadakis* are unavailing. The alleged breaches of the written contract all stem from the University's opinion of Sood's job performance.[8] The University believed Sood's job performance was unsatisfactory, and the University revoked Sood's clinical privileges on this basis. That it did so in a manner allegedly contrary to its own procedures does not change the essential character of Sood's claim.

The University contends Sood's compensation was premised upon Sood retaining full clinical privileges, and when he was without full clinical privileges, the University reduced Sood's compensation. Although the University later

---

[8] Dr. Graham's affidavit in support of the motion for summary judgment provides: "In mid October, 2008 we assigned Dr. Sood to be the staffing physician in the UI nuclear medicine clinic. By the end of the week it was absolutely clear that he was not capable of performing at the necessary level to be able to go on and I asked him to stop as an attending physician."

reinstated Sood's clinical privileges, his employment record reflects a gap in time when he lacked clinical privileges. According to Sood, this gap in his record has affected his ability to obtain subsequent employment.

If the University failed to follow the proper procedures in taking any of these actions, Sood was afforded a remedy pursuant to the administrative procedures of the bylaws or operations manual.

Sood attempts to divert attention from the fact that his job performance is at the center of this controversy by arguing alleged errors by the University in isolation. He contends for example, that there is no remedy to the reporting gap of his privileges. His attempt is to no avail. Any alleged breach of the contact must be measured by all of the facts. If Sood had administratively challenged the University's revocation of his clinical privileges, and if successful in that challenge, we know of no reason why his work history would reflect a gap in his privileges or the full salary not paid.

Sood's breach-of-contract claims, including the failure to follow procedures provided by the rules, "bear a discernible relationship" to the statutory mandates of the board of regents of and the University of Iowa and its subunits as evidenced by express and implied statutory authorization.[9]

---

[9] As noted earlier in this opinion, Iowa Administrative Code rule 681-3.2 establishes that the University's professional and scientific personnel are under the jurisdiction of the board of regents, the board has adopted personnel rules that specify in detail how appointments of professional and scientific personnel shall be made, how such employment shall be terminated, and establish a grievance and appeal procedure under which affected employees can challenge agency action that is adverse to them. *See* 681 Iowa Admin. Code chs. 3. (personnel administration), 6 (University of Iowa hospitals), & 12 (University of Iowa organization and general rules, including organization and administration; *see also* Iowa Admin. Code r. 681-12.100 (grievance procedure).

The University's actions, even if improper, were guided by its perception of Sood's job performance. There is no genuine issue of a material fact in this regard. The partial motion for summary judgment does not require us to determine the propriety of the University's actions. There is also no genuine issue of material fact Sood was required to exhaust administrative remedies before instituting his petition on the contract claim and that he failed to do so.

*B. Adequate administrative remedy.* Sood next argues that if we conclude this case involves agency action subject to administrative remedies, we should find there are no additional administrative remedies available to him or that his administrative efforts would be futile. *See Iowa Coal Min. Co., Inc. v. Monroe Cnty.*, 555 N.W.2d 418, 431 (Iowa 1996) ("When the [administrative] remedy is inadequate or its pursuit would be futile, exhaustion is not required."). However, his argument relies upon matters not in this record[10] and we refuse to address it. *Cf. Matter of Estate of Kelly,* 558 N.W.2d 719, 722 n. 3 (Iowa App.1996) (refusing to consider affidavits that were created after the fact and were not part of the record).

We affirm the partial summary judgment for the University on Sood's breach-of-contract count for failure to exhaust available administrative remedies.

**AFFIRMED.**

---

[10] His argument is grounded upon testimony provided at the trial against Dr. Graham, which is not part of the summary judgment record. *Carr v. Bankers Trust Co.*, 546 N.W.2d 901, 903 (Iowa 1996) ("The record on summary judgment includes the pleadings, depositions, affidavits, and exhibits.").