Bobby and Barbara **HOLSAPPLE**, and Glen Randolph, Appellants,

v.

James **McGRATH** and McGrath & McGrath, P.C., Appellees.

No. 93–998.

Supreme Court of Iowa.

Sept. 21, 1994.

W. Michael Murray of Murray, Jankins & Stennes, Des Moines, for appellants.

Kasey W. Kincaid of Faegre & Benson, Des Moines, for appellees.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

Bobby and Barbara Holsapple have appealed from the dismissal of their legal malpractice claim against James McGrath and his law firm. We reverse and remand.

The suit arose out of the alleged failure of attorney McGrath to (1) properly execute a quitclaim deed gifting property to the plaintiffs; (2) draft a will for the devise of the farmland to the plaintiffs; and (3) provide, pursuant to the decedent's wishes, for payment of the plaintiffs' farm debt.

On an appeal from a dismissal for failure to state a claim under Iowa Rule of Civil Procedure 104(b), our review is closely circumscribed. We assess the petition in the light most favorable to the plaintiffs and resolve all doubts and ambiguities in their favor. *Stessman v. American Black Hawk Broadcasting Co.,* 416 N.W.2d 685, 686 (Iowa 1987); *Unertl v. Bezanson,* 414 N.W.2d 321, 324 (Iowa 1987). To sustain such a motion, it must be shown that no state of facts is conceivable under which the plaintiffs might show a right of recovery. *Unertl,* 414 N.W.2d at 324; *Schmidt v. Wilkinson,* 340 N.W.2d 282, 284 (Iowa 1983).

Even the liberality in our pleading practice, however, cannot create a duty when one does not otherwise exist, *Unertl,* 414 N.W.2d at 324, and the defendants rely on that principle here: because the plaintiffs were not parties to the lawyer-client relationship, the attorney owed no duty to them, and notice pleading cannot save their case. The district court agreed.

The facts alleged are that on August 30, 1988, Don and Beulah DeVoss discussed with the attorney their intent to give to the plaintiffs the land that had been farmed by them. On October 24 the attorney drafted a quitclaim deed, and Beulah signed it on October 28. (Don DeVoss died prior to signing the deed.)

The deed was defective because it failed to include the necessary notary form, and Mrs. DeVoss died without signing a corrected deed. (The record before us does not show the date of her death.) She also executed a will that the plaintiffs alleged was intended to leave the farm to them. The will issue is addressed in a separate division.

Until *Brody v. Ruby,* 267 N.W.2d 902 (Iowa 1978), we held that no action could be brought against an attorney by anyone not in privity, the general rule then in effect. *See generally* Joan Teshima, Annotation, *Attorney's Liability, To One Other Than Immediate Client, For Negligence in Connection With Legal Duties,* 61 A.L.R.4th 615 (1988); Joan Teshima, Annotation, *What Constitutes Negligence Sufficient to Render Attorney Liable to Person Other Than Immediate Client?,* 61 A.L.R.4th 464 (1988).

In *Brody,* we said that a third party may maintain such a claim if the party is a "direct and intended beneficiary of the lawyer's services," so as to create a special relationship. 267 N.W.2d at 906. The evidence in *Brody* was found wanting on the issue of a special relationship, but the principle that a third

party may recover in certain cases was established for future cases.

Following *Brody,* we decided the case of *Schreiner v. Scoville,* 410 N.W.2d 679 (Iowa 1987). In *Schreiner,* a named beneficiary of a will filed an action against a lawyer alleging that the lawyer had negligently participated in the sale of the land that had been devised to the plaintiff, thus causing the gift to adeem.

In *Schreiner,* we noted two basic problems with recognizing third-party suits against lawyers: without the privity requirement, parties to a contract for legal services could easily lose control over their agreement. *Id.* at 681 (citing *Brody,* 267 N.W.2d at 906). In addition, the imposition of a duty to the general public could expose lawyers to a virtually unlimited potential for liability. *Id.*

On the other hand, we noted the policy consideration supporting such a claim, primarily giving effect to the intent of the testator to transfer the property. *Schreiner,* 410 N.W.2d at 682; *see also Lucas v. Hamm,* 56 Cal.2d 583, 590, 364 P.2d 685, 689, 15 Cal. Rptr. 821, 825 (1961), *cert. denied,* 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962). *See generally* Matthew R. Bogart, Comment, *Legal Malpractice for the Negligent Drafting of a Testamentary Instrument: Schreiner v. Scoville,* 73 Iowa L.Rev. 1231 (1988).

## I. *Liability Based on the Quitclaim Deed.*

Because *Schreiner* involved malpractice in connection with a testamentary disposition, the defendants argue it must be distinguished and the elements of recovery set out in that case held to be inapposite in this case, which does not involve a testamentary transfer. (In *Schreiner,* we limited attorneys' liability to the "direct, intended, and specifically identifiable beneficiaries of the ... *testamentary* instruments," and stated that "a cause of action ... will arise only when ... the testator's intent *as expressed in the testamentary instruments* is frustrated in whole or in part"). *Schreiner,* 410 N.W.2d at 682, 683.

The plaintiffs respond that the rationale of *Schreiner* is as applicable to an inter vivos transfer as it is to a testamentary one. Furthermore, *Schreiner* did not arbitrarily limit third-party suits to testamentary dispositions merely because we said that "the trend [for recognizing such a duty] is *particularly* evident in cases involving claims against lawyers accused of preparing testamentary instruments that are invalid...." *Id.* at 681 (emphasis added).

We are writing on a clean slate on the issue before us. To this date we have never approved nor rejected, under the rationale of *Brody* and *Schreiner,* third-party suits arising out of the preparation of nontestimonial instruments.

In deciding whether to recognize such a claim, we look to the rationale of *Schreiner:* the desirability of effecting the grantor's intent, the general policy of providing a remedy for a loss, and the need for an effective deterrent to future negligence. *See* 410 N.W.2d at 682. These concerns are as pertinent in a nontestamentary context as they were in *Schreiner.*

On the other hand, the dangers inherent in an overbroad recognition of liability are as real in this case as they are in a testamentary disposition case, and any recognition of a claim in these circumstances must be tempered accordingly. Primarily, we must be concerned that such a claim be so circumscribed as not to "expose lawyers to a virtually unlimited potential for liability." *See id.* at 681.

*Schreiner* required, in order to limit the scope of recognizable third-party plaintiffs, that a plaintiff be a "specifically identifiable" beneficiary "as expressed in the testator's testamentary instruments." *Id.* at 682. Thus, more than an unrealized expectation of benefits must be shown; a plaintiff must show that the testator (or here, the grantor) attempted to put the donative wishes into effect and failed to do so only because of the intervening negligence of a lawyer. We apply that requirement here.

Second, under *Schreiner,* "a cause of action ordinarily will arise only when as a direct result of the lawyer's professional negligence ... the [benefit] is ... lost, [in whole

or in part]." *Id.* at 683. We also adopt that requirement in the present context.

Interpolating the requirements for a cause of action to the circumstances of this case, we hold that a plaintiff must establish that (1) the plaintiff was specifically identified, by the donor, as an object of the grantor's intent; and (2) the expectancy was lost or diminished as a result of professional negligence. The plaintiffs' petition alleged both elements, and it was error for the district court to dismiss it.

II. *Liability Based on the Remaining Claims.*

The plaintiffs also alleged, in two separate divisions, that they were entitled to recover (1) under the will of the decedent, and (2) on an unfulfilled promise by Mrs. DeVoss to pay their farming debt.

As to these claims, the plaintiffs have not specifically alleged the elements of recovery set out in *Schreiner.* Nevertheless, we cannot say with certainty that there are no facts which may be presented by the plaintiffs that would entitle them to recovery under these theories. We conclude that it was error for the district court to sustain the motion to dismiss these claims as well.

We reverse and remand for further proceedings.

**REVERSED AND REMANDED.**