**Robert CARR, Elaine Gundacker, and Richard Heidloff, Appellants,**

v.

**BANKERS TRUST COMPANY; Bryan H. Hall; Tom Smith; Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C.; and David B. Van Sickel, Appellees.**

No. 94–2061.

Supreme Court of Iowa.

April 17, 1996.

Peter C. Riley of Tom Riley Law Firm, P.C., Cedar Rapids, for appellants.

Roger T. Stetson of Belin Harris Lamson McCormick, P.C., Des Moines, and Patrick J. McNulty of Grefe & Sidney, Des Moines, for appellees Bankers Trust Company, Bryan H. Hall, and Tom Smith.

James K. Horstman and Lloyd E. Williams, Jr. of Williams & Montgomery, Ltd., Chicago, IL, and Dennis D. Jerde and Diane M. Stahle of Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., Des Moines, for appellees Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C. and David B. Van Sickel.

Considered by LARSON, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

This is a suit for damages indirectly arising out of the loss of trust funds owned by various Iowa municipalities. The plaintiffs sued the trust custodian and the lawyers representing the trust, asserting theories of defamation and negligence in their handling of the fund. The district court granted the defendants' motions for summary judgment, and we affirm.

The Iowa Trust was established in 1990 for the pooling and investing of surplus public funds. The treasurer of each participating municipality served as a member of a supervisory board, which annually elected trustees. The trustees were charged with investment and administrative powers as outlined under an indenture of trust.

The trustees hired Bankers Trust Company and its employees (Bankers) as custodian for the trust, and Bryan H. Hall, a Bankers employee, provided the primary custodial services. The trustees retained the law firm of Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C. as special counsel for the trust. David B. Van Sickel, an attorney at Davis, provided the primary legal services. We will refer collectively to the lawyers as Davis.

In 1991 an investment advisor for the trust, Steven Wymer, misappropriated over $65 million in trust assets. Wymer also

made a profit of over $6 million by selling securities to the trust at an inflated price. Because of the resulting financial loss to the trust, several of the trust participants sued the trustees, alleging mismanagement and a breach of fiduciary duties. *See City of Dubuque v. Iowa Trust*, 519 N.W.2d 786 (Iowa 1994). They also sought the trustees' removal. The trustees were removed, and a receiver was appointed for the trust. None of these actions are involved in the present appeal.

This appeal involves a case filed by three of the trustees, Robert Carr, Elaine Gundacker, and Richard Heidloff, who sued Bankers and the attorneys representing the trustees, claiming that Wymer's misappropriation of funds resulted from the negligence of these defendants.

The trustees also brought a defamation claim against Bankers and its executive vice president (collectively Bankers) over an article published in the *Des Moines Register* on December 13, 1991. The pertinent part of the article stated:

> Officers of Bankers Trust said Thursday that their contract as a custodial agent for Iowa Trust did not require the bank to do a number of things that a custodial agency might normally be expected to do, such as make sure that collateral was received before transferring securities in a reverse repurchase agreement.

> Tom Smith, executive vice president, said the bank has other custodial arrangements in which it performs broader services "but they cost more," and that Trust's officers made it clear they did not want those broader services.

The plaintiffs claim damages for the costs of defending themselves in the actions brought against them by the trust participants, monetary losses personally suffered, and damage to their reputations.

The district court (Judge Reade) granted Bankers' motion for summary judgment on the defamation claim, finding the trustees had not sustained their burden of establishing malice. Later, the court (Judge Eisenhauer) granted Bankers' and Davis's motions for summary judgment on the negligence claims, finding that, as a matter of law, the defendants owed no duty to the trustees.

■ The general rules regarding our review of summary judgments are well-settled. We review them for correction of errors at law. *Schaefer v. Cerro Gordo County Abstract Co.*, 525 N.W.2d 844, 846 (Iowa 1994); *Fischer v. UNIPAC Serv. Corp.*, 519 N.W.2d 793, 796 (Iowa 1994); Iowa R.App. P. 4. Summary judgment is appropriate only when the entire record before the court shows that there are no genuine issues of material fact and that the district court correctly applied the law. *Schaefer*, 525 N.W.2d at 846; *Fischer*, 519 N.W.2d at 796; Iowa R.Civ.P. 237(c). The record on summary judgment includes the pleadings, depositions, affidavits, and exhibits. *Schaefer*, 525 N.W.2d at 846; *Fischer*, 519 N.W.2d at 796.

## I. *The Defamation Claim.*

*New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), significantly restricted the power of courts to grant damage awards in defamation cases brought by public officials.

> The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

*Id.* at 279–80, 84 S.Ct. at 726, 11 L.Ed.2d at 706. *New York Times* changed the defamation law in Iowa by requiring for the first time proof of actual malice. *McCarney v. Des Moines Register & Tribune Co.*, 239 N.W.2d 152, 155 (Iowa 1976).

■ The allegedly libelous statements to the *Des Moines Register* reporter were made by Tom Smith, who was Bankers' executive vice president. To show that Smith knew his statements to the *Register* were false, the plaintiffs rely on deposition testimony by another person, Bryan Hall, the Bankers Trust employee handling the trust matters.

The plaintiffs rely on Hall's testimony in the deposition that Bankers had only one

standard custodial agreement and that it had *not* offered the Iowa Trust a choice between "various forms" of custodial arrangements. Hall also stated that the trustees had not turned down an offer by Bankers to perform more extensive services as custodian. Thus, these portions of Hall's deposition contradicted Smith's comments quoted in the *Register*. The plaintiffs argue that Hall was the source of Smith's information; therefore, when Smith relayed information to the *Register* that was contrary to Hall's deposition testimony, he must have been lying, or at least a jury could infer that he was lying. Bankers argues that any such inference is too remote and that the record falls short of establishing falsity or malice.

Moreover, Bankers has another view of the facts. It points to evidence that the trustees did know that Bankers could offer other services. For example, an agent for the trust told Bankers that the trustees wanted Bankers to merely keep a ledger of aggregate deposits, and an agent for the trust discussed with Bankers the possibility that Bankers' fees would be lower if it did not perform administrative duties. The Hall deposition itself, on which the plaintiffs principally rely to show falsity, states that Bankers in fact offered other levels of services, thus supporting the truthfulness of the newspaper article. The deposition stated:

> Q. I take it, then, that if the customer has unique circumstances where they desire specific tailored services, the trust department will endeavor to accommodate the customer if it is capable of doing so. Is that a fair statement? A. We would attempt to work with people on that end, yes.
>
> Q. And if they don't ask for any special services, you enter into a standard custodial arrangement; is that correct? A. Generally, yes.

Because the evidence was in conflict as to whether Bankers had offered alternative arrangements to the trust, a jury could have concluded that the statement in question was false. But falsity is not enough. In *New York Times v. Sullivan*, the Court said:

> The question is whether [the publication] forfeits that [constitutional] protection by the falsity of some of its factual statements and by its alleged defamation of respondent.

*New York Times*, 376 U.S. at 271, 84 S.Ct. at 721, 11 L.Ed.2d at 701. The Court further stated:

> That erroneous statement is inevitable in free debate, and that it must be protected if the freedoms of expression are to have the "breathing space" that they "need ... to survive...."

*Id.* at 271–72, 84 S.Ct. at 721, 11 L.Ed.2d at 701.

▪ In addition to showing falsity, the plaintiffs must show that the statement by Smith was made with actual malice. *Id.* at 279–80, 84 S.Ct. at 726, 11 L.Ed.2d at 706. The statement was made with actual malice if it was made with knowledge that it was false or with reckless disregard for its truth or falsity. *Id.* at 279–80, 84 S.Ct. at 725–26, 11 L.Ed.2d at 706; *Jones v. Palmer Communications, Inc.*, 440 N.W.2d 884, 894 (Iowa 1989); *McCarney*, 239 N.W.2d at 156. Further,

> [t]o show malice there must be an intent to inflict harm through the falsehood. Actual antagonism or contempt has been held insufficient to show malice.

*Jones*, 440 N.W.2d at 894.

Reckless disregard has been defined as a "high degree of awareness of probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125, 133 (1964); *accord Jones*, 440 N.W.2d at 894; *McCarney*, 239 N.W.2d at 156.

▪ Because of the conflicting evidence in this record on falsity and knowledge, the plaintiffs have arguably shown a genuine issue of material fact—ordinarily enough under rule of civil procedure 237 to avoid summary judgment. A more stringent test applies, however, to avoid summary judgment here. Because of courts' solicitude for First Amendment rights, the role of summary judgment in defamation cases is rather unique: the court must examine the evidence to determine if a rational fact finder could conclude that malice had been established by clear-and-convincing evidence.

See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Supreme Court has explained the rationale for this expanded role of summary judgment:

When determining if a genuine factual issue as to actual malice exists in a libel suit brought by a public figure, a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability under [*New York Times v. Sullivan*]. For example, there is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence.

Thus, in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden. This conclusion is mandated by the nature of this determination. The question here is whether a jury could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not. Whether a jury could reasonably find for either party, however, cannot be defined except by the criteria governing what evidence would enable the jury to find for either the plaintiff or the defendant: It makes no sense to say that a jury could reasonably find for either party without some benchmark as to what standards govern its deliberations and within what boundaries its ultimate decision must fall, and these standards and boundaries are in fact provided by the applicable evidentiary standards.

Our holding that the clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions does not denigrate the role of the jury. It by no means authorizes trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.

*Anderson,* 477 U.S. at 254–55, 106 S.Ct. at 2513, 91 L.Ed.2d at 215–16. As we said in *Jones:*

Summary judgment is afforded a unique role in defamation cases. Judges have a responsibility to determine whether "allowing a case to go to a trial would, in the totality of the circumstances, endanger first amendment freedoms."

440 N.W.2d at 889 (quoting *Ollman v. Evans,* 750 F.2d 970, 1006 (D.C.Cir.1984) (en banc) (Bork, Wilkey, Ginsburg, and MacKinnon, JJ., concurring), *cert. denied,* 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985)).

The United States Supreme Court has stated that

judges—and particularly [members of the supreme court]—must exercise such [de novo] review in order to preserve the precious liberties established and ordained by the Constitution. The question whether the evidence in the record in a defamation case is of the convincing clarity required to strip the utterance of First Amendment protection is not really a question for the trier of fact. Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of "actual malice."

*Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 510, 104 S.Ct. 1949, 1965, 80 L.Ed.2d 502, 523 (1984).

In *McCarney,* we said:

Summary judgment is an integral part of the constitutional protection afforded defendants in actions such as this. Plaintiff has purposely been given the heavy burden of proving actual malice.... In order to prove actual malice, plaintiff must make an affirmative showing of facts from which defendant's probable knowledge of falsity may be constitutionally sustained.... When it has been established ... that he cannot meet [the burden], the First Amendment makes it incumbent upon the court to grant defendant's motion for summary judgment.

*McCarney,* 239 N.W.2d at 157 (quoting *Cerrito v. Time, Inc.,* 302 F.Supp. 1071, 1075–76 (D.C.Cal.1969), *aff'd,* 449 F.2d 306 (9th Cir. 1971)).

We agree with the district court that a rational finder of fact could not find by clear-and-convincing evidence the requisite elements of falsity and malice, and we affirm the grant of summary judgment on that issue.

## II. *The Negligence Claims.*

These plaintiffs asserted negligence claims against Bankers, as custodian, and Davis, as attorney for the trust. These claims are based on the allegation that Bankers wired $65 million "free" (*i.e.,* without security) on Wymer's order and that Davis failed to prevent Wymer's actions through properly drafted trust instruments.

According to the plaintiffs, Bankers failed to comply with Iowa law, the trust's investment policy, and the parties' custodial agreement. Further, they claim, Davis failed to adequately specify in the custodial agreement the duties of a custodian. The resulting financial loss to the trust, they argue, in turn caused them to suffer the financial and reputation damages that they now claim.

■ The defendants seek to uphold their summary judgments on the ground that, even if they conceded negligence (which they do, for summary judgment purposes), the plaintiffs could not recover because they failed as a matter of law to establish a duty on the part of the defendants to the individual trustees.

We recently discussed the liability of attorneys to nonclients in *Holsapple v. McGrath,* 521 N.W.2d 711 (Iowa 1994). In *Holsapple,* the plaintiffs claimed that the defendant-attorney was negligent in the drafting of a deed to them and in the preparation of a will that purported to devise property to them. As a result, they claimed, they did not receive the benefits intended for them by the grantor-testator. The plaintiffs in *Holsapple,* as in the present case, were third parties, outside the attorney-client relationship. In *Holsapple,* we reviewed our prior law with respect to attorney liability to nonclients and

observed that, under certain circumstances, a duty could be established.

In *Holsapple,* an attorney drafted a deed to donate certain land, as a gift, to the Holsapples. However, the deed was defective and prevented the transfer. The donors died before a corrected deed was signed. In addition, the plaintiffs claimed, the attorney failed to properly draft a will that would have devised land to the Holsapples.

In both the deed and the will, the claimants were specifically identified and the extent of their interest was known. The claimants were undisputably the objects of the clients' donative intent. We held under these circumstances that their petition did state a cause of action and reversed the entry of an order dismissing their claim. *Holsapple,* 521 N.W.2d at 713–14.

■ Prior to *Holsapple,* we had recognized attorney liability to third parties in the case of the negligent preparation of wills in which the plaintiffs were the intended beneficiaries. *See Schreiner v. Scoville,* 410 N.W.2d 679, 681 (Iowa 1987). We held in *Holsapple* that the liability of lawyers to third parties may be expanded to nontestimonial events. But, we held that any rule for liability in those circumstances must be closely circumscribed so as not to "expose lawyers to a virtually unlimited potential for liability." *Holsapple,* 521 N.W.2d at 713 (quoting *Schreiner,* 410 N.W.2d at 681). Accordingly, we applied the rationale of *Schreiner* to expand lawyer liability in nontestamentary cases under limited circumstances. We held that a plaintiff must establish that (1) the plaintiff was specifically intended to benefit from the execution of the instrument; and (2) this benefit was lost or diminished as a result of the lawyer's negligence. *Holsapple,* 521 N.W.2d at 714.

Under the Restatement, liability of any actor to third parties is similarly restricted.

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

(b) a special relation exists between the actor and the other which gives to the other a right to protection.

Restatement (Second) of Torts § 315 (1965).

We applied this rule in *Sankey v. Richenberger*, 456 N.W.2d 206, 209 (Iowa 1990), a case in which a gunman attacked a city council meeting. We found that the chief of police, who was present at the council meeting, did not have a special relation with the persons present at the city council meeting so as to give rise to a duty of care toward them.

As we said in *Sankey*, "the relationship giving rise to a duty of care must be premised on the foreseeability of harm to the injured person." *Id.* at 209–10. We found as a matter of law that the record failed to establish that the council members or the police chief could reasonably foresee the actor's violence toward the plaintiffs. *Id.* at 210.

■ Nothing in the present record shows that either Bankers or Davis could have foreseen the trustees' reliance on their performance in their individual capacities. This is not a suit for damage to the trust itself; it is a suit for individual damages to the trustees for collateral injury allegedly caused by the loss to the trust. Even assuming that Bankers and Davis violated their duties to the trust, there was no evidence that either Bankers or Davis could reasonably know or have foreseen that the individual trustees were relying on the performance of the custodial or legal services for the protection of their own jobs, finances, and reputations. As we said in *Unertl v. Bezanson*, 414 N.W.2d 321, 324 (Iowa 1987), a third party may not recover for a wrong to another by which the third party is only incidentally injured. Accordingly, we affirm the trial court's entry of summary judgment.

**AFFIRMED.**