# IN THE COURT OF APPEALS OF IOWA

No. 23-0458
Filed May 8, 2024


**LARRY C. BEVERAGE, Individually and as Personal Representative of the ESTATE of CHARLES E. BEVERAGE, Deceased, and LINDA K. ANDERSON, and BONNIE K. VALENTINE,**
        Plaintiffs-Appellants,

**vs.**

**ALCOA, INC., a Pennsylvania Corporation,**
        Defendant-Appellee.
_____

Appeal from the Iowa District Court for Scott County, Patrick A. McElyea, Judge.


A deceased independent contractor and his family challenge the grant of summary judgment in favor of the contractor's employer in a premises-liability action. **REVERSED AND REMANDED WITH DIRECTIONS.**


Misty A. Farris of Dean Omar Branham Shirley, LLP, Dallas, Texas, and James H. Cook of Dutton, Daniels, Hines, Kalkhoff, Cook & Swanson, PLC, Waterloo, for appellants.

Robert M. Livingston of Stuart Tinley Law Firm, LLP, Council Bluffs, for appellee.


Heard by Greer, P.J., and Ahlers and Buller, JJ.

**BULLER, Judge.**

Charles Beverage died soon after doctors diagnosed him with mesothelioma. Following his death, Beverage's estate and his children sued Alcoa, Inc.[1] Charles worked at Alcoa for around twenty years as an independent contractor. And the Beverage family brought multiple claims against Alcoa and another insulation company, asserting the two had exposed Charles to levels of asbestos that ultimately led to his cancer. Five years and two Iowa appellate opinions later, only the Beverage family's premises-liability claim against Alcoa remains. *See generally Beverage v. Alcoa, Inc.*, 975 N.W.2d 670 (Iowa 2022) (vacating a decision from our court as to these parties on an unrelated issue). On the premises-liability claim, we reverse the district court's grant of summary judgment for Alcoa and remand with directions to decide the summary-judgment issue using the established, unmodified duty of care owed by land possessors.

## I.        Background Facts and Proceedings

Alcoa was one of the largest global producers of aluminum and aluminum-based products. Charles owned a construction business and worked as an independent contractor at Alcoa's aluminum plant in Bettendorf between the 1950s and mid-1970s. One of his employees during this time relayed that Charles was "a real swell person" who "could take some kidding" but "was a hard-working man."

That work included performing construction and maintenance projects around the plant. As referenced by both parties and the district court during the proceedings, Charles referred to these projects and his relationship with Alcoa as

---

[1] Alcoa, Inc. has rebranded itself to Arconic, Inc. But we refer to it as "Alcoa" for the sake of consistency with prior opinions.

taking directions from "the muckety-mucks at Alcoa that wore the suits." According to Charles's son, who spent a summer working for him in 1967, Alcoa's people would give Charles "guidance as to what . . . he was going to do with the next project that he was going to be working on so that he could see this is how we have it here, but we don't want it this way, we want to do it this way." Charles's son also recalled that Charles helped expand and maintain the plant:

> He was a small business. So . . . they would come up with they wanted this—whatever it was—to expand. They would tell him what [they] wanted to do. He would write a proposal and give it to them with an estimate of what it would cost and a time frame. And they'd tell him to do the work or not do the work.
> . . .
> [W]hen something went wrong in the plant, say something broke, or something like that, they would call him and he would have to go and fix it.

While Charles worked there, Alcoa used insulation, equipment, and other products containing asbestos throughout the plant. In deposition, Alcoa's corporate representative noted "there were some asbestos-containing materials in the plant," which were "either used as insulation or other products in equipment, and, in some cases, as part of our very specific process activities associated with the manufacture of aluminum." Alcoa's 1960's piping standards also called for asbestos-containing insulation to be used for some high-pressure steam piping; other insulation was specified for lower-pressure team piping.

The Beverage family asserts the plant's employees would sometimes need to install or remove insulation. Charles's office was in the facility, and one of his employees recalled that Charles's work took him to all areas of the facility to observe projects, including the locations where insulation work was underway. The employee did not remember seeing any contemporaneous warning signs

conveying the hazards of breathing in insulation dust or requiring protection while working around the plant. But Alcoa urges no eyewitness could establish a specific instance when Charles personally encountered asbestos while working in the plant. And Charles's construction and maintenance company was not involved in the plant's production work.

According to an Alcoa "Asbestos Program Status Report," as of 1989 the plant still had at least thirty-seven miles of insulated pipes; twelve pressure vessels; four heating, ventilation, and air conditioning systems; and forty-nine furnaces containing asbestos. That report confirmed employees were still being "exposed to low levels of airborne asbestos" at that time because of "damaged and deteriorating insulation present in the workplace." Alcoa's corporate representative also confirmed the company knew exposing people to certain levels of asbestos could lead to chronic lung conditions as early as the 1940s and was also aware of studies linking asbestos exposure to lung cancer by the 1950s.

In 2014, Charles began experiencing chest pain, significant weight loss, "increasing weakness, decreasing muscle mass[,] and shortness of breath." Doctors diagnosed him with "malignant mesothelioma." A medical expert in mesothelioma provided a written report to the court, explaining: "Mesothelioma is a rare disease in the absence of asbestos exposure" and often has a latency period of decades between exposure and diagnosis. The disease "exhibit[s] a dose-response relationship such that the more someone is exposed to asbestos, the greater their risk for" contracting it. Mesothelioma "grows along the surfaces" inside the lungs, spreading to the heart and other organs throughout the chest cavity. As noted by the expert, "[w]hile many terminal cancers are painful,

mesothelioma stands out as one of the most painful cancers" because patients usually suffer from a "progressive inability to breathe adequately due to massive growth of tumor surrounding the lungs and heart" until death. To put it bluntly, patients usually die "by gradual suffocation."

The Beverage family's medical expert opined that Charlies would have been exposed to the levels of asbestos needed to contract the disease "no later than 1967 and continuing to about 1976." Charles experienced a steep health decline over 2015, was diagnosed with malignant mesothelioma, and died that October.

Two years later, Charles's family brought claims against Alcoa and the company's insulation contractor for negligence, strict liability, breach of express and implied warranties, loss of consortium, and punitive damages. The Beverage family later amended their petition to include a premises-liability claim against Alcoa. Alcoa and its insulation contractor filed motions for summary judgment on all claims soon after.

The district court granted the defendants' motions based on its interpretation of a recently enacted asbestos-liability-limitation statute. *See* Iowa Code § 686B.7(5) (2017). We affirmed. *See generally Beverage v. Alcoa, Inc.*, No. 19-1852, 2021 WL 1016602 (Iowa Ct. App. Mar. 17, 2021), *vacated*, 975 N.W.2d 670. But the supreme court vacated our decision and reversed the district court's judgment, holding the statute was inapplicable to claims other than products liability. *See Beverage*, 975 N.W.2d at 688 (noting the Beverage family's "claims against Alcoa are based on Alcoa's actions of failing to provide Charles with a safe environment to work, either as a [land possessor] or as the one who controlled his work environment" and were not barred by the statute).

On remand, the defendants again moved for summary judgment, with Alcoa asserting it owed no duty to Charles because of his status as an independent contractor. The Beverage family resisted, arguing Alcoa owed Charles two duties. First, as the employer of the persons who exposed Charles to asbestos. And second, "as a [land possessor] who controlled the work of its independent contractors."

The district court again granted summary judgment to the defendants. The court found the Beverage family had not shown Alcoa maintained a necessary degree of control over Charles's day-to-day work. The Beverage family moved to reconsider, enlarge, or amend, asserting Alcoa's duty as a land possessor and its duty as the employer of an independent contractor were distinct and both applicable. The district court denied that motion. The Beverage family appeals.

## II.  Standard of Review

We review a grant of summary judgment for correction of legal error. *Breese v. City of Burlington*, 945 N.W.2d 12, 17 (Iowa 2020). "Summary judgment is appropriate only when the record shows no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019). We view the record in the light most favorable to the nonmoving party—here, the Beverage family. *See Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 545 (Iowa 2018). In doing so, we consider every inference that can be reasonably drawn from the record. *Hedlund*, 930 N.W.2d at 715. But we do not weigh evidence or make credibility determinations. *Carr v. Bankers Tr. Co.*, 546 N.W.2d 901, 905 (Iowa 1996). "When the facts are undisputed, we

reverse only if the district court misapplied the law." *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 149 (Iowa 2001).

## III.    Discussion

The Beverage family's sole challenge is to the district court's grant of summary judgment on their premises-liability action. Premises-liability claims fall under the umbrella of negligence. *Ludman v. Davenport Assumption High Sch.*, 895 N.W.2d 902, 909–10 (Iowa 2017). Negligence claims require a plaintiff to show four elements: "the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages." *St. Malachy Roman Cath. Congregation v. Ingram*, 841 N.W.2d 338, 346 (Iowa 2013) (quoting *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 98 (Iowa 2012)). For the purposes of this appeal, we focus only on the first. Whether a duty exists between two parties is a legal question assigned to the court as gatekeeper. *See Thompson v. Kaczinski*, 774 N.W.2d 829, 834 (Iowa 2009). All other elements of a negligence claim are fact questions. *Hill v. Damm*, 804 N.W.2d 95, 99 (Iowa Ct. App. 2011).

On appeal, the Beverage family abandons their theory Alcoa owed Charles a duty as the employer of an independent contractor. Instead, they focus on Alcoa's duty as a land possessor.

### A.  What Is the Proper Duty of Care?

In Iowa, our general duty of care stems from the Restatement (Third) of Torts: "An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7(a) (Am. L. Inst. 2010) [hereinafter Restatement

(Third)]; *see also Thompson*, 774 N.W.2d at 834–36. This general duty may be displaced or modified in "exceptional cases" where "an articulated countervailing principle or policy warrants." Restatement (Third) § 7(b).

Our duty analysis for land possessors "is a specific application of" the general duty of care "based on the circumstance of real-property ownership." *Gries v. Ames Ecumenical Hous., Inc.*, 944 N.W.2d 626, 629 (Iowa 2020) (internal quotations omitted) (quoting Restatement (Third) § 51 cmt. b); *see also Ludman*, 895 N.W.2d at 910. Under this specific application, "a land possessor owes a duty of reasonable care to entrants" in two ways applicable to this case. Restatement (Third) § 51. First, through "conduct by the land possessor that creates risks to entrants on the land." *Id.* § 51(a). And second, through "artificial conditions on the land that pose risks to entrants on the land." *Id.* § 51(b).

Alcoa does not dispute that it was in possession and control of its aluminum plant or that Charles was an entrant. The Beverage family asserts Alcoa owed Charles a duty as a land possessor because the company's conduct created the risk of asbestos exposure by using asbestos-containing insulation, equipment, and products. The family also claims Alcoa created an artificial condition of airborne asbestos fibers when the company had its employees remove insulation—arguing by inference that, given the volume of asbestos-containing insulation in the plant, some of the removed insulation must have been made of asbestos fibers. *Cf. Hedlund*, 930 N.W.2d at 715 (considering reasonably deduced inferences in favor of nonmoving party).

In line with our standard of review, we do not weigh the factual strength of the Beverage family's claims. *Carr*, 546 N.W.2d at 905 (noting "[c]redibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are" for juries, not judges deciding motions for summary judgment (citation omitted)); *see also Clinkscales v. Nelson Sec., Inc.*, 697 N.W.2d 836, 841 (Iowa 2005) ("Mere skepticism of a plaintiff's claim is not a sufficient reason to prevent a jury from hearing the merits of a case."). Nor did the district court. The court also did not address either of the Beverage family's theories for land possessor liability or apply the standard duty of care for the land possessor-entrant relationship. Instead, the court applied a modified duty analysis found in Restatement (Second) of Torts for employers of independent contractors:

> One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
> (a) fails to provide in the contract that the contractor shall take such precautions, or
> (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

Restatement (Second) of Torts § 413 (Am. L. Inst. 1965) [hereinafter Restatement (Second)].

In doing so, the district court relied on *Van Fossen v. MidAmerican Energy Co.*, 777 N.W.2d 689 (Iowa 2009). There, an independent contractor brought a wrongful death action against his employer and the jobsite's land possessor for the death of the contractor's wife from mesothelioma, an alleged consequence from her regular exposure to asbestos while washing his work clothes. 777 N.W.2d at 691–92. Our supreme court held the employer owed "no general duty of reasonable care to a member of the household of an employee of the independent

contractor." *Id.* at 696. The court modified the general duty of care for employers of independent contractors under Restatement (Third) section 7 to Restatement (Second) section 413, with vicarious liability under sections 416 (work dangerous in absence of special precautions) and 427 (negligence as to danger inherent in the work). *Id.* at 696–97.

The district court appears to have applied and expanded *Van Fossen* to modify the duty of care Alcoa owed Charles under Restatement (Third) section 51. This modification makes the duty Alcoa would owe under a land possessor-entrant relationship the same duty it would owe under their employer-independent contractor relationship. The Beverage family claims the court erred in doing so. Alcoa does not defend the district court's modification. And it would be hard-pressed to do so.

*Van Fossen* did not discuss premises liability or the duties a land possessor owes to an entrant. Instead, the court found the contractor's wife never stepped foot on the premises and concluded none of the appellant's claims were "based on the well-established special duty of possessors of real estate to protect non-trespassers against dangerous conditions on real estate." *Id.* at 693; *see also* Restatement (Third) ch. 9, Scope Note ("Historically, the duties of a land possessor to those off the land have been treated as an independent matter both from the general duty of care and the specific duty of the possessor to those on the land."). We recognize the duty of land possessors to entrants is a specific application of the general duty of care modified for employers of independent contractors in *Van Fossen*. Restatement (Third) § 51 cmt. b. But that general duty is still "distinct from the special duties owed by" land possessors. *Van Fossen*, 777 N.W.2d

at 696 n.7. A federal court interpreting our tort laws came to a similar conclusion. *See Mendez v. Echeverria*, No. 4:21-cv-00142-JEG-SBJ, 2022 WL 5052505, at *7–12 (S.D. Iowa Aug. 24, 2022) (finding peculiar-risk claim and premises-liability claim to be distinct and coming to different conclusions on each for purposes of summary judgment). Thus, we agree with the Beverage family that the district court misapplied existing law to modify the duty analysis here.

## B. Should We Create a New No-Duty Rule?

In the briefing, Alcoa appears to concede *Van Fossen* did not modify its duty of care to Charles as a land possessor. The company instead urges us to now modify or eliminate that standard of care. *See* Restatement (Third) § 7(b).

Consistent with the Restatement (Third), we may modify or displace an actor's duty of care "if either the relationship between the parties or public considerations warrants such a conclusion." *McCormick v. Nikkel & Assocs., Inc.*, 819 N.W.2d 368, 371 (Iowa 2012). The limited circumstances for modification or displacement are "to facilitate . . . transparent explanations of the reasons for a no-duty ruling and to protect the traditional function of the jury as factfinder." Restatement (Third) § 7 cmt. j. In choosing whether to create a new no-duty rule, we must ensure we are addressing an actor's duty and not their scope of liability, because "no-duty rules are matters of law decided by the courts, while the defendant's scope of liability is a question of fact for the factfinder." *Id.* § 7 cmt. a. Liability that turns on the specific factors of a case is a scope question; liability that turns on categorical factors or patterns of conduct is a duty question. *Id.* Similarly, a court determining whether a particular actor breached a duty of reasonable care as a matter of law is different from a no-duty rule. *Id.* § 51 cmt. i. In short, "[n]o-

duty rules are appropriate only when a court can promulgate relatively clear, categorical, bright-line rules of law applicable to a general class of cases." *Id.* § 7 cmt. a.

Alcoa asks us to modify its duty as a land possessor to independent contractors to track Restatement (Second) section 413, relating to danger created by contractor work. Alcoa starts by echoing our supreme court's policy rationales in *Van Fossen* concerning the employer–independent contractor relationship:

> The limited nature of the duty owed by employers of independent contractors takes into account the realities of the relationship between employers and their contractors. One of these realities is that employers often have limited, if any, control over the work performed by their contractors. Employers typically hire contractors to perform services beyond the employers' knowledge, expertise, and ability. The contractors' knowledge and expertise places them in the best position to understand the nature of the work, the risks to which workers will be exposed in the course of performing the work, and the precautions best calculated to manage those risks. These realities dictate that the persons in the best position to take precautions to manage the risks are the contractors. The policy of the law therefore justifies the rule placing the primary responsibility on the contractor for assuring proper precautions will be taken to manage risks arising in the course of the performance of the work. . . . If liability were not limited in this fashion, inefficiencies would result as employers would be required to develop the knowledge and expertise in their contractors' fields so as to be prepared to understand even the ordinary risks involved in the work and assure that the precautions necessary to manage those risks are taken.

777 N.W.2d at 698; *see also* Brendan Smith, Note, *A Dereliction of Duty? The Iowa Supreme Court's Careless Treatment of No-Duty Doctrines Under the Restatement (Third) of Torts*, 107 Iowa L. Rev. 391, 404–10 (2021) (critiquing our supreme court's no-duty determinations in cases like *Van Fossen* as a departure from the *Thompson* court's adoption of the Restatement (Third)).

From there, Alcoa proclaims: "[t]he general duty of reasonable care in premises-liability cases should not apply in this case because [Charles] was an employee of an independent contractor that had control over his work and was in the best position to manage the risks of the work." The company asserts "[t]he duty of reasonable care under a premises liability claim involving an independent contractor should not result in a duty different from an independent contractor claim" because "[b]oth claims emanate from the same relationship." And Alcoa concludes by insisting that declining to modify their duties as land possessors would "greatly expand [the] universe of potential liability for" land possessors and lead to "[l]ongstanding Iowa businesses, hospitals, schools, and governmental buildings" being open to risks of claims stemming from asbestos exposure by employees of independent contractors.

The Beverage family does not contend the family's premises-liability claim survives under that duty analysis. Instead, the family urges that the policy considerations that motivated the court in *Van Fossen* are inapplicable here. The family notes it is not arguing Charles was harmed by the work of an independent contractor, but by the conduct of Alcoa itself through use of asbestos-containing insulation, equipment, and products and having its employees remove that insulation. The concerns about who controlled Charles's work and whether Charles's work was beyond Alcoa's knowledge, expertise, or ability are inconsequential because he was not the party using or removing the insulation and creating the risk. Alcoa was in a better position to understand the risks inherent in the work of its employees and its own premises. As for Alcoa's concerns about a surge in litigation, the Beverage family responds that land possessors "already

have a duty of reasonable care regarding their direct negligence that harms another, as any individual has."

We find the Beverage family has the better argument. Alcoa and Charles's relationship as land possessor and entrant is distinct from their relationship as employer and independent contractor. *See Van Fossen*, 777 N.W.2d at 696 n.7. The same concerns warranting a modification for employers—the general lack of control over an independent contractor's work—do not support modifying the duty of land possessors who retain control of their premises. *See Allison v. Page*, 545 N.W.2d 281, 283 (Iowa 1996) ("[L]iability is premised upon control."). Alcoa does not assert it turned over control of the plant or its employees to Charles during his construction or maintenance projects, nor does the record support such a conclusion. *See McCormick*, 819 N.W.2d at 371 ("Simply put, the cases involving parties that turn over control of premises to another party are 'a category of cases' where 'an articulated countervailing principle or policy' applies." (quoting *Thompson*, 774 N.W.2d at 835)); Restatement (Third) § 49 cmt. d, at 226 (noting land can have multiple possessors).

We are not persuaded by Alcoa's claim that failing to modify its general duty of care as a land possessor will lead to a drastic spike in lawsuits. The duties owed by land possessors to independent contractors are not new. *See Van Essen v. McCormick Enters. Co.*, 599 N.W.2d 716, 719 (Iowa 1999) (noting that, under our pre-Restatement (Third) tort framework, possessors of land owed a duty to use reasonable care to keep the premises in a reasonably safe condition for business invitees); *Konicek v. Loomis Bros.*, 457 N.W.2d 614, 618 (Iowa 1990) (independent contractors and their employees are business invitees). And the cause of action

for those exposed to asbestos on a person's land is similarly well-established. *See Beverage*, 975 N.W.2d at 676 (observing that premises-liability claims are common "against 'peripheral' defendants" in asbestos litigation and that employees of independent contractors have made those claims). For example, other states with similar tort regimes have not documented a deluge of lawsuits despite declining to modify a land possessor's duty as Alcoa proposes. *See Gaytan v. Wal-Mart*, 853 N.W.2d 181, 197 (Neb. 2014) (highlighting "the fact that the [land possessor] does not retain sufficient control of the work so as to become liable for injuries to employees of an independent contractor does not mean that the [land possessor] is relieved of its nondelegable duty to provide a safe place to work for employees of independent contractors"); *Kinsman v. Unocal Corp.*, 123 P.3d 931, 940 (Cal. 2005) (finding land possessor could be liable for exposing independent contractor to known but hidden asbestos). In sum, Alcoa gives us "no reason to question a jury's ability to perform in the area of premises liability as opposed to any other area of tort law." *Koenig v. Koenig*, 766 N.W.2d 635, 645 (Iowa 2009) (recognizing "that requiring all to exercise reasonable care for the safety of others is the more humane approach" (citation omitted)).

Alcoa's proposed modification raises policy concerns, notably that independent contractors would become a distinct classification of entrant in a category of premises-liability cases—one with few protections. *See* Restatement (Third) § 7 cmt. a. And our supreme court has decried such a policy of classification. *Koenig*, 766 N.W.2d at 645 (abandoning the distinction between invitees and licensees in premises-liability cases). Alcoa's modification would recreate a "special privilege" for land possessors to be careless with their property

as to some entrants, a privilege which "is fundamentally no longer the public policy of this state." *See id.* This modification would also go against our policy of placing "a higher valuation of public safety over property rights." *Id.* We hesitate to subject litigants once again to such "semantic morass." *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 631 (1959) (discussing the long move toward "a single duty of reasonable care in all the circumstances").

We conclude with a final policy concern stemming from the prudential observation that both parties requested this appeal be transferred to our court to apply existing legal principles, rather than retained by the supreme court. As noted above, the district court ruling does not align with existing law; it expands *Van Fossen*'s modification from only employer–independent-contractor responsibilities related to dangerous work to a distinct and much broader class of cases: the relationship between all land possessors and entrants. We decline Alcoa's invitation to approve such an expansion, which diverges from our existing caselaw on a land possessor's duties. *See Ludman*, 895 N.W.2d at 910. Instead, we hold the Beverage family's premises-liability claim should be assessed under the established, unmodified land possessor–entrant duty of care. *See* Restatement (Third) § 51; *Ludman*, 895 N.W.2d at 910.

### IV. Disposition

After considering the evolution of our tort case law, the relationship between the parties, competing public-policy considerations, and existing precedent, we vacate the district court's ruling modifying the applicable duty of care owed by land possessor to independent contractors. We reverse and remand with directions for

the district court to apply the established, unmodified duty rule for land possessor–entrant liability.

**REVERSED AND REMANDED WITH DIRECTIONS.**

Ahlers, J., concurs; Greer, P.J., concurs specially.

**GREER, Judge** (concurring specially).

I agree with the majority that this case should be remanded for further consideration but disagree over what we should direct the district court to do. Thus, I concur in the judgment only. Recognizing that we have little guidance on how an independent contractor's employee's claim for negligence plays with the theory of recovery under premises liability, in my opinion, the court must revisit Alcoa, Inc.'s (Alcoa) potential liability under both the land possessor-entrant theory and the employer-independent contractor theory without separating the two—as Charles Beverage (Charles) was both an entrant and the employee of Alcoa's independent contractor at the same time.

In an earlier summary judgment proceeding in this matter, the court dismissed all of the claims made by Charles's estate and his children against Alcoa based upon a legal interpretation of Iowa Code section 686B.7(5) (2018). Our supreme court disagreed with that result. *See Beverage v. Alcoa, Inc.*, 975 N.W.2d 670, 673 (Iowa 2022). In *Beverage*, the court examined the relationship of the parties, finding that Charles worked as an employee of an independent construction contractor, Beverage Construction (Beverage), inside the Alcoa aluminum plant from the 1950s through the mid-1970s. *Id.* "There [were] no allegations that Alcoa manufactured or produced asbestos-containing products." *Id.* In the first motion-for-summary-judgment proceeding, our supreme court analyzed the applicability of a claim under Iowa Code section 686B.7(5) and stated:

> Premises liability claims are well-recognized claims that arose in
> asbestos litigation after manufacturers started seeking bankruptcy
> protection. *See* [Patrick M. Hanlon, Developments in Premises

Liability Law 2005, ALI-ABA Course of Study: Asbestos Litigation in the 21st Century, SL041 ALI-ABA 665, 668 (Westlaw 2005)] ("In the late 1980s, premises cases began to be brought against electric utilities, and in the 1990s they extended to other kinds of companies, including paper mills, steel mills, and other facilities where asbestos was widely used."). At common law, Beverage could assert a claim against Alcoa based on its status as a premises owner, *see, e.g.*, *Van Fossen v. MidAm. Energy Co.*, 777 N.W.2d 689, 696 (Iowa 2009) (distinguishing between a duty owed by a premise's owner to an independent contractor under Restatement (Second) of Torts § 413 and the lack of duty owed to the invitee's spouse who never visited the site), or as the one who retained control over Beverage's work environment, *see McCormick v. Nikkel & Assocs., Inc.*, 819 N.W.2d 368, 371 (Iowa 2012) (addressing liability of the employer of an independent contractor under Restatement (Second) of Torts § 414). Neither form of liability depended on Alcoa selling or manufacturing an asbestos-containing product. Yet the district court's interpretation of section 686B.7(5) completely eliminates both types of liability.

*Id.* at 686. Going further, our supreme court described Charles's claims as being "based on Alcoa's actions of failing to provide Charles with a safe environment to work, either as a premises owner or as the one who controlled his work environment." *Id.* at 688 (defining the claim earlier as one in common law). It determined that the common law premises claim was not precluded by statute and so dismissal of all of Charles's claims was improper. *Id.* (noting that three justices dissented and would have affirmed the district court's dismissal of all claims against Alcoa under section 686B.7(5)).

After going back to the district court on remand, the second motion for summary judgment filed by Alcoa also involved a legal question about duty. To be sure, each side's description of the facts was widely divergent, but the duty question started with the parties' relationships, which was not disputed. And

although the district court dismissed Charles's claim on the basis that Alcoa did not retain control of Beverage's work under Restatement (Second) section 414—so Alcoa likewise had no duty to Charles—on appeal, Charles abandons that theory. With that theory discarded, it is important to review how Charles framed his theory of recovery. In Charles's resistance to Alcoa's motion for summary judgment, he argued that Alcoa exposed him to asbestos through the work of its own employees, specifically that there was asbestos on site and the Alcoa employees cut and manipulated asbestos products on the premises in Charles's presence. Once the court dismissed the claim a second time, Charles moved to reconsider and fine-tuned the argument, pointing to Restatement (Third) section 51 and asserting Alcoa employees, not the insulation independent contractor or Beverage, exposed Charles to asbestos by removing asbestos insulation. The court denied the motion to reconsider. Now Charles narrows the question to whether the court incorrectly dismissed the common law premises claim under the land possessor duty analysis found in Restatement (Third) section 51. In his appellate brief, Charles also adds contentions that Alcoa had a duty to ascertain the actual condition of the premises and make the area reasonably safe or give warning of the actual condition or risk involved, subtly different than the argument made to the district court.

I part ways with the majority characterization that the district court "appears to have applied and expanded *Van Fossen* to modify the duty of care Alcoa owed Charles under Restatement (Third) section 51" and that the "modification makes the duty Alcoa would owe under a land possessor-entrant relationship the same duty it would owe under their employer-independent contractor relationship."

To avoid the relationship/duty analysis, Charles, as the employee of an independent contractor hired by Alcoa, wants to separate his abandoned claim of Alcoa's duty as the employer of an independent contractor from Alcoa's duty as a land possessor; it is my opinion the two cannot be separated but must be considered together based on the caselaw we have on the books. The majority characterizes the district court decision as an expansion of *Van Fossen*, making "the duty Alcoa would owe under a land possessor-entrant relationship the same duty it would owe under their employer-independent contractor relationship." Likewise, the court did not "create" a new no-duty rule, as the majority notes. The special exception involving the hirer/landowner and independent contractor should apply to any analysis of a duty when those parties are in the mix. Though we have no cases directly on point, we do have direction from the caselaw that allows special relationships to trump the general duty owed. So, I would start with clarifying the relationship involved here between the parties and how it impacts the duty of Alcoa. This is the direction we must give the district court on remand. Beverage was employed by Alcoa as an independent contractor and the question is what duty Alcoa has to an employee of Beverage whose work was controlled by Beverage, but while on property controlled by Alcoa. Here, Alcoa is a landowner/hirer. Despite the land-possessor rules for general entrants to the property, the relationships sometimes require different results.

Alcoa asserts the common law premises liability question still involves a determination of duty, which it argues was answered in *Van Fossen* and required analyzing the exceptions to the general rule that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission

of the contractor or his servants." 777 N.W.2d at 693 (quoting Restatement (Second) of Torts § 409, at 370 (1965)). One problem with using *Van Fossen* for guidance is that those parties conceded it was not a premises-liability case since Van Fossen's wife never stepped on the premises, instead it was presented as a failure-to-warn case. *See id.* Still, *Van Fossen* came down to whether a duty was owed to the wife of an independent contractor's employee by the landowner/hirer. *Id.* at 694–95. So, unlike the majority, I did not see that the district court here was creating a "new no-duty rule." Thus, a question concerning the interplay between a premises-liability theory involving an independent contractor, that contractor's employee, and the landowner/hirer requires that we visit the duties owed and any policy rationale for that duty. I would still apply the analysis of duty articulated in *Van Fossen* because to do otherwise ignores the commercial world and obligations inherent in the hiring of an independent contractor.

Both concepts of premises liability and general negligence involve the concept of duty and under the Restatement (Third), those authors wrote:

> There are two different legal doctrines for withholding liability: no-duty rules and scope-of-liability doctrines (often called "proximate cause"). An important difference between them is that no-duty rules are matters of law decided by the courts, while the defendant's scope of liability is a question of fact for the factfinder. When liability depends on factors specific to an individual case, the appropriate rubric is scope of liability. On the other hand, when liability depends on factors applicable to categories of actors or patterns of conduct, the appropriate rubric is duty. *No-duty rules are appropriate only when a court can promulgate relatively clear, categorical, bright-line rules of law applicable to a general class of cases.*
> *When addressing duty, courts sometimes are influenced by the relationship between the actor and the person harmed. . . .*
> . . . .

. . . At the same time, new concerns may arise that have not previously been the basis for modification of the duty of reasonable care and, when those are invoked, they should be identified and explained.

Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7 cmt. a (Am. Law Inst. Mar. 2024 update) (emphasis added) [hereinafter Restatement (Third)].

As a general rule, the owner of land owes a duty to entrants on the land under our caselaw. *See Ludman v. Davenport Assumption High Sch.*, 895 N.W.2d 902, 910 (Iowa 2017) (adopting the duty analysis for land possessors as contained in section 51 of the Restatement (Third)). Charles argues we need only look to section 51 for guidance here:

> Subject to § 52, a land possessor owes a duty of reasonable care to entrants on the land with regard to:
> (a) conduct by the land possessor that creates risks to entrants on the land;
> (b) artificial conditions on the land that pose risks to entrants on the land;
> (c) natural conditions on the land that pose risks to entrants on the land; and
> (d) other risks to entrants on the land when any of the affirmative duties provided in Chapter 7 [general duty] is applicable.

Restatement (Third) § 51. Yet, in *Ludman,* our supreme court first addressed the duty question between the parties before applying the landowner duty under section 51. *See* 895 N.W.2d at 910 ("We now must determine if the contact-sports exception to liability or primary assumption of the risk or limited-duty rule due to an open and obvious condition relieves [the school] of the duty contained in section 51 of the Restatement (Third)."). There the court noted that section 51 had "not modified the principles of a no-duty rule contained in the remainder of the [Restatement (Third)]." *Id.* "In other words, we have found 'some activities or

circumstances have been excepted from the reasonable-care duty in favor of the imposition of a less stringent duty of care.'" *Id.* (citation omitted). And here, as the comments to section 51 suggest, "policy-based modification of the duty of land possessors" is available in certain circumstances. Restatement (Third) § 51 cmt. a. For example, "[s]ection 52 which limits the duty owed to flagrant trespassers, reflects the tension between tort law and property law that § 7(b) recognizes as a basis for modifying the ordinary duty of reasonable care." Restatement (Third) § 51 cmt. b. And as was noted in comment g, "[o]rdinarily, a possessor of land does not owe a duty of reasonable care for risks arising from the conduct of transients and *independent contractors while on the possessor's land*." Restatement (Third) § 51 cmt. g (emphasis added). Likewise, the comments in the general duty section of the Restatement (Third) make a distinction about no-duty and limited-duty rules in cases involving owners and occupiers of land where the duty is "influenced by issues that are important in property law." Restatement (Third) § 7 cmt. d.

"[A] lack of duty may be found if either the relationship between the parties or public considerations warrants such a conclusion." *McCormick v. Nikkel & Assocs., Inc.*, 819 N.W.2d 368, 371 (Iowa 2012). *McCormick* reinforced the policy involving independent contractors:

> In *Van Fossen,* we made clear again that our previous law of duty was otherwise still alive and well. *Thus, we held that employers of independent contractors do not owe a general duty of due care under [Restatement (Third)] section 7, but owe only a limited duty as described in Restatement (Second) of Torts section 413.*

*Id.* (emphasis added) (citation omitted). With an eye towards the role of relationships, in *Ludman*, our supreme court recognized it still had to "determine if

the contact-sports exception to liability or primary assumption of the risk or limited-duty rule due to an open and obvious condition" relieved the land possessor of "the duty contained in section 51 of the Restatement (Third)." 895 N.W.2d at 910; *accord id.* (finding the contact-sports exception did not apply to a sports facility but only to participants and that a condition being open and obvious is not conclusive in determining the possessor of land's duty and remanding for new trial on other issues).

Fast forward to 2020, our supreme court followed the analysis in *Ludman* but cautioned that the "remaining law of duty" left with the adoption of the Restatement (Third) comprised "exclusions from the ordinary duty of reasonable care." *Gries v. Ames Ecumenical Hous., Inc.*, 944 N.W.2d 626, 629 (Iowa 2020) (citation omitted) (setting out examples of limited-duty exclusions to the ordinary duty of reasonable care). And in *Gries*, the court confirmed as existing law that "employers of independent contractors do not owe a general duty of care under Restatement (Third) section 7." *Id.* Longstanding precedent modifying the ordinary duty of care along with significant policy considerations can justify limiting liability for land possessors. *See id.* at 630 (noting the continuing storm doctrine's purpose is not to require a landowner to become a "de facto insurer responsible for all accidents" every time it snows.); *see also McCormick*, 819 N.W.2d at 372 (stating the limited-duty rule involving independent contractors and employers is a law "of long standing in Iowa").

Under the majority's analysis, we have abandoned the guidance from *Gries* where the court first analyzed the duty based upon the parties' relationships and the public-policy concerns in a premises-liability action. And to ignore any

consideration of duty and skip to the elements of premises liability would mean that any employee of an independent contractor could always maintain a premises-liability action directly against the landowner without consideration of the relationships between the parties. So, I think we must first address those duty factors here and not default to a pure premises-liability analysis.

Thus, on remand, I would direct the district court to examine Alcoa's general duty as a possessor of land together with the policy considerations for a limited duty between Alcoa and the independent contractor, Beverage, and how those considerations interplay with Charles's claim in mind. Alcoa hired Beverage to do maintenance work at the aluminum plant. Beverage hired Charles as its supervisor employee. As a policy matter, in the typical independent-contractor situation, Beverage would control the employee's work assignments and how those assignments might be done, including what safety precautions, working conditions, and gear are utilized to avoid environmental risks. The independent contractor limited-duty rule recognizes that the independent contractor is then in the best position to manage risks.[2] *See Van Fossen*, 777 N.W.2d at 698–99 (listing policy reasons for a limited duty of employers of independent contractors).

To address the commercial realities, the *Van Fossen* court clarified that the contractor's control of its employees and their work conditions and risks justified "limiting the liability of employers of independent contractors to the circumstances

---

[2] As a separate observation, other policy considerations and commercial ramifications are involved between the landowner/hirer and an independent contractor and its employees, for example, who has worker's compensation laws for work-related injuries, or if indemnification terms or other commercial benefits or detriments have been negotiated.

specified in Restatement (Second) sections 413, 416, and 427." *Id.* at 698. Under this review of sections 413 and 416, *Van Fossen* stripped down the factors involving risks inherent in the work and the knowledge of the parties of those risks to see if the work performed involves a peculiar unreasonable risk of harm to others. *Id.* at 693–97. To do so, it recommended "conducting an analysis of the features of [the work] that created a particular risk." *Id.* at 694 (determining that the independent contractors who directed the maintenance worker should have provided appropriate work directions and equipment as the risk was not peculiar to the job but a function of their poor failures). Industrial work involves significant degrees of risk outside the definition of "peculiar risk" and can inhere in the nature of the work. *Id.* at 694. To reach the duty required of Alcoa, I believe the court needed to analyze whether the nature of the work here fit into the rule that "[o]rdinary construction work requires routine precautions which any careful contractor could reasonably be expected to take, and is therefore not generally considered to involve a peculiar risk."[3] *Id.* (cleaned up). In short, the court needed to determine if the risk here was a peculiar risk. And under section 427, the

---

[3] To do this analysis, the work conditions should be considered. At oral argument, Charles admitted that the evidence of exposure was not "terribly strong." Only two employees offered information relative to Charles's exposure to asbestos. One was his son, who worked half-time one summer with Charles at Alcoa in the 1970s and the other was Edward Allers who was supervised by Charles from around 1960 to 1970 or so. Based upon the record made, no one saw Charles work directly with asbestos—as he was a supervisor directing other Beverage employees, only the insulation company installed the existing insulation, and no one was able to identify if or where in the plant asbestos abatement occurred and by whom. Likewise, consideration of the duties and roles at the time period of Charles's tenure with Beverage, when the mere presence of asbestos was not recognized by OSHA as an issue until it was formulated after 1972, might also be a factor. And a further consideration would be Charles's retreat in this appeal from the position that the insulation installer did not create conditions harming Charles.

question of whether the work involved an "abnormally dangerous activity" or a "danger [that] must inhere in the activity itself at all times, whether or not carefully performed" is answered. *Id.* at 695–96 (internal quotation marks and emphasis omitted). In *Van Fossen*, the court answered these questions by finding no duty on the part of the landowner/hirer but found the independent contractor should manage the manner of the work with safety precautions to protect the employees. *Id.* at 694, 696-97 (confirming "the broad general duty of due care described in Restatement (Third) section 7, employers of independent contractors owe only the limited duty prescribed in Restatement (Second) section 413 and may be held vicariously liable for the negligence of their contractors under circumstances described in sections 416 and 427").

With the direction given by the majority, I would instead instruct the court to proceed with an analysis of how these sections impact the limited-duty relationship between Alcoa and Charles, considering that Beverage was the independent contractor who was responsible for Charles's work assignments and the precautions related to that work and the interplay of Alcoa's duties to Charles as an entrant, if any. For these reasons, I concur in the judgment only.